217 P.2d 915

KELSOE et ux. v. GROUSKAY et ux.

No. 5175.

Supreme Court of Arizona.

April 24, 1950.

Stephen B. Rayburn, of Phoenix, Morgan & Locklear, of Phoenix, for appellants.

Brown & Langerman, of Phoenix, for appellees.

PHELPS, Justice.

This is an action in replevin instituted by appellees hereinafter called plaintiffs, against appellants, hereinafter called defendants, for the possession of a 1942 Studebaker automobile. Defendants denied generally the allegations of plaintiffs' complaint and filed a cross-complaint for recovery of possession of the car or for its value and for damages for loss of its use and for its depreciation.

The facts are that plaintiffs were the owners of the automobile in question and in April, 1947, sold it to one Phillip A. Karlyle for the sum of $1,495. Karlyle gave plaintiffs one $100 bill and his check upon a local bank for $1,395, being the balance of the purchase price. Plaintiffs thereupon delivered the car to Karlyle and also delivered to him the certificate of title thereto duly endorsed in blank. Negotiations between plaintiff and Karlyle had been pending for two or three days and were finally consummated in the evening of April 29th. Early the following morning Karlyle sold the Studebaker car and a 1935 Chevrolet to defendants for $1,000 cash. Karlyle represented to defendants at the time of the sale that he had purchased the Studebaker for his wife but had a telegram that she was ill in California and that he had to sacrifice the cars in order to go to her. He stated he owned a home in Phoenix but that he could sell the cars more quickly than he could sell the home. He first asked $1,100 for the two cars but later accepted defendants' offer of $1,000. Defendants went to the bank and got the cash and paid for the cars after they had been told by a brother-in-law who was then engaged in the second-hand car business that he considered it a good buy, and that the titles were all "okay".

The certificate of title to the Chevrolet stood in the name of Karlyle. He endorsed this certificate and turned it over to defendants. He also delivered to defendants at the time the certificate of title to the Studebaker endorsed in blank by Mr. Grouskay.

On April 30th as soon as the bank opened at 10:00 A.M. plaintiffs presented the Karlyle check to the bank upon which it was drawn and payment thereof was refused upon the ground that Karlyle had no funds in the bank.

Defendants on the same day made application to the Motor Vehicle Department of Arizona for transfer to them of title to both cars. Title issued to them immediately for the Chevrolet. Title was held up temporarily on the Studebaker but was later issued by the department to defendants.

Plaintiffs, after locating the Studebaker, brought this action in replevin against defendants. The cause was tried to a jury but at the conclusion of all of the evidence the case was withdrawn from the jury and a verdict instructed for plaintiffs on the complaint and for cross-defendants on the cross-complaint. From the judgment entered thereon and from an order denying defendants' motion for a new trial defendants prosecute this appeal.

Appellants assigned as error:

1. The court erred in holding that title to the Studebaker car did not pass to defendants and in directing a verdict for plaintiffs.

2. The court erred in holding that plaintiffs were not estopped to assert title to the car as against defendants as innocent purchasers for value without notice.

3. The court erred in refusing to grant defendants' motion for judgment against plaintiffs upon the ground that they were innocent purchasers for value without notice and plaintiffs were therefore estopped to assert title against them.

4. The court erred in refusing to submit to the jury questions of fact as to whether the defendants were innocent purchasers for value without notice, etc.

5. The court erred in rendering judgment for plaintiffs and against defendants.

■■■ Whether a sale of the kind here involved between Grouskays and Karlyle is conditional or whether it was intended to pass title is always a question of fact which must be determined by the circumstances surrounding each case. If the parties to the transaction in the instant case intended it as a completed sale then title passed and plaintiffs cannot, under any circumstances, prevail. Or if the defendants here are innocent purchasers for value without notice the case must be reversed regardless of whether title passed from plaintiffs to Karlyle at the time that transaction was closed.

What are the circumstances here? Plaintiffs, after two or three days' negotiation, sold their car to Phillip Karlyle, a total stranger, after the banks were closed, to wit, in the nighttime. They accepted from Karlyle $100 in cash and a check on a local bank for the balance of $1,395 to cover the purchase price of the car. Without first ascertaining if the check was good plaintiffs delivered the car together with certificate of title thereto duly endorsed in blank to the purchaser. Nothing remained to be done by plaintiffs to vest title in Karlyle. Plaintiffs neither retained possession of the car nor evidence of title thereto until they could first ascertain if the check would be honored. Not one word was said by Grouskay to Karlyle at the time to the effect that title to the car was to remain in him until it was determined that his check was good. Plaintiffs' relinquishment of both possession of the car and certificate of title flatly contradicts such an intent. The exercise of either precaution would have fully protected

plaintiffs as against a subsequent purchaser of the car.

Armed with the possession of the car itself and with certificate of title duly endorsed in blank by plaintiffs all that Karlyle had to do was to present the certificate of title assigned to him to the Motor Vehicle Department of Arizona and have certificate of title issue in his name. No other conclusion can be drawn from the conduct of plaintiffs but that they intended title to pass to Karlyle at the time the transaction was closed with him. Otherwise they would have withheld either possession of the car or evidence of title until the check was honored.

Section 66-211, A.C.A.1939, provides in part that: "When the owner of a registered vehicle transfers or assigns his title or interest thereto, * * * the owner shall * * * endorse on the back of the certificate of title to such vehicle, if issued, any assignment thereof, with the warranty of title in the form printed thereon, and shall deliver the same to the purchaser or transferee at the time of delivery to him of such motor vehicle, * * *."

■ It will be observed that there is no requirement in the above provision of the statute that the seller shall do more than endorse on the back of the certificate any assignment thereof and shall deliver the certificate of title to whom? Not necessarily to the purchaser. The law says "to the purchaser or transferee" thus indicating clearly that the certificate of title need not be delivered to the purchaser, but that it may be delivered to the purchaser or anyone to whom he desires the title transferred. In other words, it may be endorsed in blank and delivered to anyone to whom the purchaser may sell the car. This could only be done by an endorsement in blank as was done in the instant case. The law does not exact that the name of the assignee shall be written in by one who endorses the certificate of title. The word "endorsement" has no such connotation. Webster's International Dictionary defines it as "to sign one's name on the back of a check, bill or note; to inscribe one's signature."

There is nothing sacrosanct in the deraignment of title to a car requiring the name of each owner of a car to appear somewhere as an assignee in the chain of title. Such a requirement would add nothing to the protection of a purchaser but would materially delay the transfer of title to cars sold and then immediately resold in this state and would increase the expense and inconvenience in consummating the sale and transfer of title in such cases.

■ We said in the case of Pacific Finance Corporation v. Gherna, 36 Ariz. 509, 287 P. 304, that the spirit and purpose of the statute here involved is undoubtedly to prevent the sale of stolen or converted automobiles; that the requirement that a certificate of title be passed with every

transfer will tend greatly to promote the desired result is unquestioned. As pointed out above the endorsement of the certificate of title fully met the requirements of the law and no duty devolved upon defendants to make any inquiry about plaintiffs.

■ There is no dispute in the evidence as to the material facts in this case. We are definitely committed to the proposition that where there is no conflict in the evidence and where it is such that reasonable minds may not differ as to the inferences to be drawn from the facts, it then becomes a question of law for the court and nothing remains for the jury to determine. Yates v. Russell, 20 Ariz. 338, 180 P. 910; Blue Bar Taxicab & Transfer Co. v. Hudspeth, 25 Ariz 287, 216 P. 246.

■ Based on the evidence before us, reasonable minds cannot differ as to the inferences to be drawn from the evidence in this case relating to the passing of title to the car in question from plaintiffs to Karlyle at the time the car was sold to him. This conclusion makes it unnecessary to discuss other questions raised.

Judgment reversed with instructions for a new trial on the cross-complaint in accordance with the principles herein enunciated and the statutes of the state relating to replevin.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concurring.