Vannoy Chevrolet Co., Inc., appellant, v. Billy D. Baum, Paul Kessler, d/b/a Whitey's Auto Sales, et al., appellees.

No. 52372.

(Reported in 151 N.W.2d 515)

June 6, 1967.

Bechly, McNeil & Bonham, of Montezuma, and Shuttleworth & Ingersoll, of Cedar Rapids, for appellant.

Robert E. Ford, of Cedar Rapids, for appellees Donald E. Kula and Collins Employees Credit Union.

Stanley M. Nielsen, of Cedar Rapids, for appellee Billy D. Baum.

STUART, J.—■ This is an action in replevin. The principal issue presented on this appeal is whether, under Iowa law, a car dealer who fully complied with the statutes in obtaining ownership of an automobile and holds the original certificate of title properly assigned to it is entitled to possession of the automobile against the claim of an innocent purchaser for value whose right to possession is based on a second certificate of title on the same vehicle which was obtained by assignment of a duplicate title issued by the State on a false affidavit.

Plaintiff, Vannoy Chevrolet Co., Inc., Montezuma, sold a 1963 Chevrolet Impala convertible to John Morrison of Ottumwa. It later took the car back on a trade-in and received the certificate of title with the assignment from Morrison dated August 29, 1963, duly executed. It was not required to obtain a new certificate of title. Section 321.48(1). It filed the "Iowa Dealer Purchase Receipt" as required by section 321.48(3), Code of Iowa.

Following past business practices, plaintiff "sold" or "consigned" the car to Billy Baum who took it to Cedar Rapids for resale. As part of the transaction, Baum signed a note at a Montezuma bank for the purchase price of $2550. Mr. Waldo E. Vannoy, individually, not as president of plaintiff corporation, signed the note as cosignor or guarantor. The proceeds of the note were paid to plaintiff and the car was removed from its inventory.

The "Reassignment by Iowa Licensed Dealer" on the title certificate was signed "Vannoy Chevrolet, Inc. by Waldo E. Vannoy". The buyer's name and address were left blank. The reassignment was not dated nor notarized. The certificate of title was attached to the note and left at the bank. This procedure was followed to make sure Mr. Baum would settle the note at the bank and Mr. Vannoy would not be called upon to pay it. When the automobile was sold, Mr. Baum was to pay the note and receive the title certificate.

The car was placed on "Whitey's Auto Sales" used car lot in Cedar Rapids. A salesman sold the car to Shirley Bazila and the purchase price was received. Baum wrote a check on Whitey's Motor Sales for his share of the purchase price to buy another car in Wisconsin. He took the title to the Wisconsin car and one to a station wagon to Montezuma and left them as security for the note taking the title to the Chevrolet convertible. The check for the Wisconsin car was returned marked "insufficient funds". The Wisconsin car was returned to the original owner and, as he had not been paid, Baum returned the title certificate for the Chevrolet to Vannoy.

There is a dispute as to how much the owner of Whitey's Motor Sales knew of the transaction. He knew Vannoy Chevrolet, Inc. was involved because he called Vannoy about the title. The trial court found he assumed the title was lost. He testified no one admitted having it. The salesman went to Morrison in Ottumwa and prevailed upon him to sign an application for a duplicate title in which he falsely stated the certificate of title had been lost or destroyed and that the vehicle had not been sold or encumbered. He assigned the duplicate to Whitey's Auto Sales who in turn obtained a certificate title in its own name, regular on its face.

In the meantime Shirley Bazila had returned this car and purchased another. It was then sold to Donald E. Kula who financed it through Collins Employees Credit Union. Title was issued to Kula and the credit union lien was properly noted thereon.

The Montezuma bank called upon Vannoy to pay the Baum note. Vannoy Chevrolet, Inc. brought this action in replevin

against Baum, Whitey's Auto Sales, Kula and the credit union. The trial court dismissed the action as against all parties. Plaintiff has appealed. Only Kula and Collins Employees Credit Union have filed an appellees' brief. They will hereinafter be designated as defendants.

I.  Defendants point out that replevin is a possessory action and that plaintiff, having sold the car to Baum, received payment and removed the car from its inventory, has no right to possession. Plaintiff argues that it, Vannoy, Baum and the bank had a right to agree it would hold the title certificate until Baum paid the bank and that plaintiff remained the owner under the Iowa law.

A decision on the merits of this proposition would serve no useful purpose. Both plaintiff and Kula are basing the right to possession on ownership. A determination of right to possession without a determination of ownership under one of these two Iowa title certificates would only mean another lawsuit. We therefore deem it advisable to decide the principal issue stated at the beginning of this opinion.

II.  Here a second certificate of title to one automobile was issued on an application for a duplicate title executed by someone other than the owner and supported by a false affidavit. It is now held by an innocent purchaser for value. What are his rights in the automobile as opposed to those of the holder of the original certificate of title? This is a case of first impression.

In Northern Ins. Co. of New York v. Miller, 256 Iowa 764, 772, 129 N.W.2d 28, 32, we refused to protect an innocent purchaser who held an Iowa title certificate to a stolen automobile saying: "Since defendants purchased the Buick from a thief and secured their Iowa certificate of title through said thief they are not entitled to ownership or possession of the automobile." We also extended comity to out of state lienholders who had complied with local laws on recording liens by permitting such a lienholder to prevail over the holder of an Iowa title certificate which had been issued without the lien being noted as a result of a series of fraudulent maneuvers. Merchants and Farmers State Bank v. Rosdail, 257 Iowa 1238, 131 N.W.2d 786, 790, 136 N.W.2d 286.

This case is similar to the foregoing cases, in all three instances an Iowa title had been obtained by fraud or misrepresentation. Criticism has been directed at these two opinions on the theory that a literal reading of section 321.45(2) should conclusively establish an ownership interest in the holder of the Iowa title certificate. 14 Drake Law Review 36, 38; see: Commercial Credit Corporation v. Pottmeyer, 176 Ohio St. 1, 197 N.E.2d 343. The reasoning set forth in these authorities has no application to these facts. A different question arises here because a second Iowa title certificate was issued for the same vehicle under a misrepresentation of fact. Since both parties possess Iowa title certificates, neither can claim the advantage section 321.45(2) gives a titleholder over a non-titleholder. 42 Iowa Law Review 72, 87. There is more reason to protect the holder of the original title certificate here than appeared in the cited cases.

There is a surprising lack of authority on this particular issue. Yarwood v. De Lage, 56 Ohio Law Abs. 205, 206, 91 N.E.2d 272, is the only case we have found factually similar. There plaintiff in a replevin action had sold a car to one Hiscott. The certificate of title was held by a third party as security for a loan and was not delivered. Hiscott was issued a second title certificate on his affidavit that he had assembled the car from parts. The car and the second title certificate ended up in the possession of De Lage, an innocent purchaser for value. The Ohio Supreme Court in a per curiam opinion commented: "Of course, the present possessor of the car has no title to the vehicle for the reason that a valid title cannot be resurrected out of a fraudulently obtained title * * *."

However, plaintiff did not prevail because the court held under the circumstances Hiscott was entitled to the certificate of title as against plaintiff and defendant had the right of possession through him. The rights of the holder of the security were not considered.

Since we have, under the cited Iowa cases, permitted persons without Iowa title certificates to prevail over a holder of an Iowa title certificate obtained by fraud and misrepresentation, it appears the same protection should be extended to the holder

of the original Iowa certificate of title. Therefore, unless plaintiff has so conducted itself that it is estopped from denying the validity of the second certificate, it is entitled to prevail.

III. Defendants claim plaintiff by its own acts created a factual situation which estops it from claiming title to or possestion of the vehicle. Argument on this point is limited to one page and authorities cited are general and not factually pertinent.

■ ■ The only act of plaintiff upon which defendants could have relied was the delivery of possession of the car to Baum knowing it would be offered for resale on a used car lot. This is not sufficient to constitute an estoppel against plaintiff. It cannot be based upon the second certificate issued by fraud and misrepresentation because plaintiff had no knowledge of such fact. Plaintiff held legal title to the vehicle and was the owner under Iowa law section 321.1(36). Title had not been transferred to anyone else as provided in section 321.45(2) and we have. held title to an automobile can be transferred only by the assignment of the certificate of title executed and delivered in accordance with said section. Varvaris v. Varvaris, 255 Iowa 800, 124 N.W.2d 163, 165, 100 A. L. R.2d 1215; Calhoun v. Farm Bureau Mutual Ins. Co., 255 Iowa 1375, 125 N.W.2d 121, 126; State v. Sabins, 256 Iowa 295, 127 N.W.2d 107, 108.

Plaintiff retained control of the certificate of title to make sure Baum paid the bank. "As long as plaintiff held it, it knew no one could acquire a title or lien ahead of .its lien, nor could 'any waiver or estoppel operate in favor' of any person against it, and it knew that 'no court in any case at law or in equity' could 'recognize the right, title, claim, or interest of any person in or to any [that] motor vehicle'." Crawford Finance Co. v. Derby, 63 Ohio App. 50, 55, 25 N.E.2d 306, 308.

In addition plaintiff knew the seller was required to deliver the certificate of title at the time of delivery of the vehicle. 321.45(3). This could not be done as long as plaintiff retained control over the certificate.

We have previously noted the similarity between our section 321.45(2) and the appropriate Ohio statute. Calhoun v. Farm Bureau Mutual Ins. Co., supra, loc. cit. 255 Iowa 1378, 125 N.W.2d 123. To establish an estoppel against plaintiff in view

of this statute it would be necessary to show conduct by which it would be estopped to deny the validity of the second certificate. There is no such evidence.

In two instances of floor plan operation the Ohio court has held in favor of the innocent purchaser as against the finance company on an agency theory. Mutual Finance Co. v. Kozoil, 111 Ohio App. 501, 165 N.E.2d 444; Fouke v. Commercial Credit Corp., 116 Ohio App. 145, 187 N.E.2d 160. Facts here do not support such a holding.

IV. The Code does not require a licensed dealer to obtain a new certificate of title, when an automobile is acquired for resale. It may hold the certificate of title of the prior owner by proper assignment until transferring the car to the next purchaser. Section 321.48(1). It is required to issue a receipt and file two copies with its county treasurer who notes the transaction and sends one copy to the county treasurer of the residence of the former owner and one to the state. Section 321.48(3). Plaintiff complied with this provision and the receipt showing it had purchased the automobile in question was filed with the copy of the title to this car in the Department of Public Safety. It was there when the duplicate title was issued.

A representative of the department testified: "We do not check to see whether the Iowa Dealer's Purchase Receipt is on file when we issue a duplicate title. We do not regard it as evidence of ownership. We consider the purpose of it to relieve the former owners from liability in the operation of the car. It is not for title purposes."

Although this is not an issue here, it seems appropriate to comment that this unfortunate situation might have been avoided if the department had checked its file, and made appropriate inquiry concerning this part of its record. Without deciding the purpose or effect of this statutory requirement, the failure to acknowledge the presence of the receipt in the file made this duplication of title possible. Duplicate titles should not be issued so casually.

For the reasons stated, we hold plaintiff is the legal owner of the 1963 Chevrolet Impala involved herein and is entitled to possession of the same or judgment for its value as against the

1018

appellees.—Reversed and remanded for judgment in accordance herewith.

All JUSTICES concur.