433 P.2d 52

C. F. DOHERTY dba Doherty Motors and Western Surety Company, Appellants,

v.

Arnold OBREGON, Appellee.

No. 2 CA–CIV 352.

Court of Appeals of Arizona.

Nov. 9, 1967.

**402**

Morse & Kain, by Sidney L. Kain, Tucson, for appellants.

Darrel G. Brown, Tucson, for appellee.

KRUCKER, Judge.

Arnold Obregon purchased a 1956 GMC three-quarter ton pickup truck on August 21, 1964 from the appellant, C. F. Doherty dba Doherty Motors. He received with the truck Arizona Certificate of Title #3429154, a "duplicate title," which indicated there were no liens on the truck.

He paid $750 for the truck which the seller represented to be free and clear of liens.

The facts disclosed by the record are that one Earl Shoebridge had been issued Arizona Certificate of Title #3404379 on June 18, 1964 for the truck in question, showing no liens. On July 2, 1964 Shoebridge applied for a duplicate title claiming the prior title had been lost. The duplicate title, #3429154, was issued to Shoebridge on July 7, 1964. Shoebridge subsequently mortgaged the vehicle on July 16, 1964 to the Southern Arizona Bank and Trust Company, submitting the original title for recordation of the lien thereon. This was received by the Motor Vehicle Division August 3, 1964.

Shoebridge then sold the subject vehicle to Doherty Motors and executed a transfer of title using the duplicate title #3429154. Doherty Motors sold the vehicle to plaintiff Obregon delivering the duplicate title showing no liens and plaintiff financed the purchase through Credit Thrift of America, executing a chattel mortgage dated August 21, 1964 which was received by the Motor Vehicle Division September 17, 1964.

The Arizona Motor Vehicle Division refused to issue to title to Obregon until the legal status of the liens of the Southern Arizona Bank and Trust Company and Credit Thrift of America was determined.

Being unable to obtain a title, Obregon sued Doherty Motors and Western Surety Company, the surety on Doherty Motors dealers bond, to rescind the sale. These facts are undisputed and after both parties moved for summary judgment the court granted plaintiff's motion and entered a written judgment in favor of the plaintiff for return of the purchase price.

█ This indeed provides a novel situation and a novel method of operation by Mr. Shoebridge. The sole question raised is whether a lien forwarded to the Motor Vehicle Division with the original title shall be valid against a subsequent purchaser or encumbrancer without notice after a duplicate title has been issued, who acts in reliance on the duplicate title. In other words, is Obregon to bear the onus of Shoebridge's wrongdoing and the consequent situation thereby created? We think not.

Appellants claim that the judgment should be reversed contending that A.R.S. § 28–325 provides the sole method whereby an encumbrance may become effective against a subsequent purchaser without notice. A.R.S. § 28–325 provides:

"A. No conditional sale contract, conditional lease, chattel mortgage or other lien or encumbrance, title retention instrument or other instrument affecting or evidencing title to, ownership of, or reservation of title to any registered vehicle, other than a lien dependent upon possession, is valid as against the creditors of an owner acquiring a lien by levy or attachment, or subsequent purchasers or encumbrancers without notice, until the requirements of this section have been complied with.

"B. There shall be deposited with the vehicle division a copy of the instrument creating and evidencing such lien or encumbrance, which shall be executed in the manner required by the laws of this state and *accompanied by the certificate of*

*title last issued for the vehicle.* If the vehicle is of a type subject to registration under this article but has not been registered and no certificate of title has been issued therefor, the copy of the instrument creating the lien or encumbrance shall be accompanied by the application of the owner for an original registration and issuance of an original certificate of title and by the fees provided by law." (Emphasis supplied)

No authorities are cited to this court by appellants and we find none in point. Appellants' position rests entirely on their interpretation of A.R.S. § 28–325 to the effect that in order to perfect a lien, the *last* title issued for the vehicle should control.

■ We believe that the statutes do not contemplate more than one title to a single vehicle and the words "title last issued" were intended to mean "title issued to the last owner."

■ The purpose of requiring chattel mortgages upon automobiles to be filed or registered is to protect the mortgagee not in possession from the claims of subsequent purchasers.° 7A Blashfield, Cyclopedia of Automobile Law and Practice § 4701 at 31.

There is an implied warranty of title under A.R.S. § 44–213 which provides in pertinent part:

> 3. An implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person, not declared or known to the buyer before or at the time when the contract or sale is made.

The appellant-seller's breach of this warranty entitled the appellee to rescission, one of the several remedies available to him. A.R.S. § 44–269, subsec. A, par. (4); Gallagher v. Viking Supply Corp., 3 Ariz. App. 55, 411 P.2d 814, 15 A.L.R.3d 1 (1966).

Judgment affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.