673 P.2d 961

**WALLACE IMPORTS, INC., an Arizona corporation, Plaintiff-Appellee,**

v.

**Rosalie LaPorte HOWE, real party in interest, Defendant-Appellant.**

**1 CA–CIV 4869.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 27, 1983.

Reconsideration Denied Nov. 1, 1983.

Lewis & Roca by Paul G. Ulrich, Richard N. Goldsmith, Michael L. Cooper, Phoenix, for plaintiff-appellee.

John D. Lewis, P.C. by John D. Lewis, Tempe, for defendant-appellant.

## OPINION

EUBANK, Judge.

This is an appeal from the trial court's judgment resulting from a judicial review of an administrative decision pursuant to A.R.S. § 12–901 *et seq.* The trial court, in effect, set aside the administrative decision of the motor vehicle division, Department of Transportation (Division), which was in favor of Rosalie LaPorte Howe (Mrs. Howe), appellant, and instead entered judgment in favor of Wallace Imports (Wallace), appellee. Mrs. Howe has appealed pursuant to A.R.S. § 12–913.

Although a number of issues are raised on appeal, the first two, involving the scope of review and abuse of discretion by the trial court, are dispositive of this appeal. We are of the opinion that the trial judge ignored the scope of administrative review in this matter and thereby erred as a matter of law. Further, since the record supports the administrative decision, the trial court's judgment must be reversed and the administrative decision reinstated.

The facts found by the Division hearing officer are as follows. Mrs. Howe and James Howe purchased a Toyota automobile from Fann Toyota on March 22, 1978. (They were married the next day). Mrs. Howe paid for the automobile with her sole and separate property. On May 12, 1978, original title number D131748 for the Toyota was issued to Rosalie Howe or James Howe, as joint tenants with the right of survivorship, and each empowered and authorized the other to act "as their Attorney in-fact to assign the certificate of title by his or her signature alone, and thereby transfer, sell, mortgage, or otherwise encumber the vehicle in the same manner as though all joint owners had acted and signed." As a result of marital problems James Howe left home on May 16, 1978, taking with him clothing, personal papers, and other personal effects of Mrs. Howe and her children. (At the time of the administrative hearing an annulment of the marriage was pending and James Howe had secreted himself to avoid service of process). On May 26, 1978, Mrs. Howe filed an application with the Division for a duplicate title indicating that the original title was lost. The duplicate title, number D181093, was issued on May 30, 1978. On June 5, 1978, Mrs. Howe signed an application for title under her maiden name of Rosalie LaPorte. Title number D199472 was issued to her in that name on June 6, 1978. Sometime in the late evening of June 29 or early morning hours of June 30, 1978, James Howe, without Mrs. Howe's personal consent or knowledge, took the Toyota from the driveway of Mrs. Howe's home. On the morning of June 30, James Howe took the vehicle to Wallace, presented the *original* certificate of title, and sold the car to Wallace for $5,500. He immediately cashed the check and "departed for points unknown." No attempt was made by Wallace to ascertain if the title presented by James Howe to Wallace was still valid.

The record of the hearing also shows that Mrs. Howe was notified on June 30 that her Toyota was at Wallace's dealership, that she called the police and personally went to the dealer and demanded that Wallace return her vehicle, that Wallace refused her demand, and that a request was made to the Division to determine the title issue. The hearing was set by the Division under the authority of A.R.S. § 28–304(D), which grants to the Division the authority to issue and cancel certificates of title. The express purpose of the hearing, had on July 21, 1978, was "to determine if cause exists to cancel Title No. D199472," the title issued to Mrs. Howe as Rosalie LaPorte on June 6, 1978.

Wallace's main contention raised in its memorandum filed with the hearing officer and at the hearing was that Mrs. Howe's sworn statement to the Division that she had "lost" the original certificate of title was untrue.[1] Mrs. Howe was closely cross-examined on this issue at the hearing. The hearing officer found that "the evidence presented which purported to show that the original Title was not lost at the time the duplicate [title] application was signed was insufficient to substantiate the argument that the original Title was in fact not lost." The clear implication of the finding is that Mrs. Howe believed the original title was lost when she signed the application for the issuance of a duplicate title. This issue involved a credibility question which was resolved by the fact finder in favor of Mrs. Howe.

On July 25, 1978, the hearing officer ruled that title number D199472 issued to Rosalie LaPorte on June 6, 1978, was valid and the original title, number D131748, issued on May 12, 1978, with which James Howe attempted to transfer title to Wallace, was null and void.

Wallace appealed the decision to the Superior Court under the Judicial Review of Administrative Decisions Act (A.R.S. § 12–901 *et seq.*,) by filing its complaint requesting a trial *de novo* and requesting that the

---

1. Other issues raised at the administrative level were that Wallace was a purchaser of the Toyota in good faith and therefore entitled to title pursuant to A.R.S. § 44–2348(A) [U.C.C. § 2–403], and that Mrs. Howe's transfer to herself was invalid for lack of consideration.

entire record of the Motor Vehicle Division's hearing be transmitted to the court pursuant to A.R.S. § 12–909(B). The record was transmitted and filed with the court on December 14, 1978. It includes a full transcript of the July 21st hearing. The record shows that no objection was made to the filed record or transcript by any party.[2] Thereafter both Mrs. Howe and the State filed their answers to Wallace's complaint. Wallace then moved for "Judgment on the Pleadings" pursuant to Rule 12(c), Rules of Civil Procedure, 16 A.R.S. Such a motion is civil pretrial motion which neither comports with the Administrative Review Act, nor with A.R.S. § 12–910, the Scope of Review, which read in 1978 as follows:

A. An action to review a final administrative decision shall be heard and determined with convenient speed. The hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to a finding, order, determination or decision of the administrative agency shall be heard by the court, except in the event of a trial de novo or in cases where in the discretion of the court justice demands the admission of such evidence.

B. The trial shall be de novo if trial de novo is demanded in the complaint or answer of a defendant other than the agency and if no hearing was held by the agency or the proceedings before the agency were not stenographically reported so that a transcript might be made. When a trial de novo is available under the provisions of this section, it may be

had with a jury upon demand of any party.

Mrs. Howe objected to Wallace's motion as inappropriate under former A.R.S. § 12–910 and objected to Wallace's attempt to raise a new issue of estoppel by way of its motion for judgment on the pleadings. As a part of her response, Mrs. Howe also filed a cross-motion for summary judgment based on the administrative record on appeal.

The trial court never addressed Mrs. Howe's objections but instead, treating the administrative appeal as a pretrial motion, granted Wallace's motion for judgment on the pleadings and denied Mrs. Howe's cross-motion for summary judgment. In addition, the judgment grants Wallace affirmative relief by directing the motor vehicle division to recognize the validity of Wallace's title, number D131748, the original title executed from James Howe to Wallace, and to cancel title number D199473, the title resulting from Mrs. Howe's transfer to herself in the name of Rosalie LaPorte. No findings of fact were made by the trial court. Thus, the judgment reverses the administrative decision and Mrs. Howe appeals from the judgment which grants Wallace title to the Toyota.

Mrs. Howe's first and second issues[3] on appeal address the trial court's failure to comply with the Administrative Review Act's Scope of Review, pursuant to former A.R.S. § 12–910, supra.

 Wallace's first response is that since the hearing was not stenographically reported, but instead was tape recorded and later transcribed, that Wallace was entitled

---

**2.** Under former A.R.S. § 12–910 (amended 1980), a trial de novo could only be had, as a matter of right, if the administrative hearing had not been stenographically reported. This was changed in 1980 to include mechanically recorded hearings. Laws 1980, Ch. 72, § 1. The hearing sub judice was mechanically recorded prior to the amendment.

**3.** 1. Could the Maricopa County Superior Court reverse the final administrative decision of the Arizona Department of Transportation motor vehicle division determining the appellant's title to be valid and that through

which the appellee claims to be null and void without a determination that the administrative decision was illegal, arbitrary, capricious or involved an abuse of discretion?

2. Was the final administrative decision of the Arizona Department of Transportation Motor Vehicle Division, deciding that the title issued to appellant on June 6, 1978 was valid and that the original title issued May 12, 1978 and through which appellee claims was null and void, illegal, arbitrary, capricious or the result of an abuse of discretion?

to a trial *de novo*. In our opinion there is no merit to this argument. This argument was never timely raised by Wallace for consideration by the court. Indeed, whether or not Wallace was entitled to a trial *de novo* depended, in the first instance, on the sufficiency of the transcript. A.R.S. § 12–910, *supra*. The sufficiency of the transcript or record could only be raised by timely objection to it. Wallace did not object to it and therefore waived any objection to the transcript it might have had. Furthermore, Wallace's memorandum supporting the motion for judgment on the pleadings did not object to the sufficiency of the record. It argued instead that the facts before the court were undisputed. Of course at that point in time, the only undisputed facts before the court were those found by the hearing officer and set forth in the administrative decision.

Next, Wallace contends that even if it was not entitled to a trial *de novo* the facts before the superior court were undisputed, thereby allowing the court to draw its own legal conclusions. We do not disagree with this position. A.R.S. § 12–910(A), *supra,* provides for review by the court of all questions of law and fact presented by the entire record. 3 *Arizona Appellate Handbook,* § 32.3.9.2.6. Based on this position Wallace argues that the only issue before this court on appeal is whether the trial court made an erroneous legal conclusion based on the facts.

Wallace then relies on former A.R.S. § 28–313 which stated: "The certificate of title shall be valid for the life of the vehicle so long as the vehicle is owned by the original holder thereof."[4] Wallace argues that as long as James Howe and Mrs. Howe owned the vehicle the original certificate of title would be valid. Therefore, when James Howe sold the Toyota to Wallace on June 30, the Howes were still owners and the original certificate was still valid. This conclusion is required, contends Wallace, because the legislature did not specifically

resolve the question of whether a duplicate title takes precedence over a still outstanding original title. The only statutes that bear upon the question, Wallace maintains, are former A.R.S. § 28–304(B) and A.R.S. § 28–325(E), relating to placement of liens on the face of the title and providing that the title is constructive notice of liens, respectively. Therefore, Wallace concludes, the legislature must have intended that the original title takes precedence over a duplicate certificate of title. In support of this argument, Wallace cites *Doherty v. Obregon,* 6 Ariz.App. 401, 433 P.2d 52 (1967) and *South Texas Bank v. Renteria,* 523 S.W.2d 780 (Tex.Civ.App.1975).

First, we disagree with Wallace's statutory construction argument. Prior to the 1972 general election, A.R.S. § 28–313 consisted of four subsections. The first subsection involved the certificate of title, set out above, and three other subsections involved, generally, the yearly expiration of vehicle registration, the required payment of fees, the renewal of registration and the issuance of license plates. When the electors enacted the amendment to art. 9, § 11, Arizona Constitution, in the 1972 General Election, the conditional enactment of A.R.S. § 28–313, set out above, took effect thereby removing the last three subsections and leaving the first subsection as it was. The removed subsections were partly absorbed into other enactments. *See, e.g.,* A.R.S. § 28–305(C). The legislative intent regarding A.R.S. § 28–313, prior to the 1972 election, we believe is clear: the registration on each vehicle in the state expired yearly and required the owner to obtain a new registration each year and to pay a yearly license fee, while the certificate of title did not expire but remained valid for the life of the vehicle while owned by the same owner. The 1972 election did not change the legislative intent regarding A.R.S. § 28–313. It still must be read in juxta-position with the yearly registration statutes. Thus, A.R.S. § 28–313 does not

---

4. The 1979 amendment to this section added: "unless it has been replaced by a duplicate title pursuant to § 28–312." This codified language previously appeared only on the face of the Division's application for duplicate title form.

address the validity of a lost original title which is replaced by a duplicate title.

Wallace's argument regarding A.R.S. §§ 28–304(B) and 28–325(E) as the only statutes which bear on the title question is also questionable. Former § 28–304(B) reads:

> B. The certificate of title shall contain upon the reverse side a space for the signature of the owner, and he shall sign his name in ink in the space upon receipt of the certificate. The certificate shall also contain upon the reverse side forms for assignment of title or interest and warranty thereof by the owner, with space for notation of liens and encumbrances upon the vehicle at the time of transfer.

while former § 28–325(E) states:

> E. The filing and issuance of a new certificate of title as provided in this section shall constitute constructive notice to creditors of the owner or to subsequent purchasers of all liens and encumbrances against the vehicle described therein, except those authorized by law which are dependent upon possession. If the documents referred to in this section are received and filed in the central office of the vehicle division within ten days after the date of execution thereof, the constructive notice shall date from the time of execution, but otherwise the notice shall date from the time of receipt and filing of the documents by the vehicle division as shown by its endorsement thereon.

Wallace argues that these two subsections taken together indicate the legislature's intent that the certificate of title itself shall be notice to purchasers and creditors of the status of the title to an automobile.

Neither of these subsections directly address the title question. A.R.S. § 28–304(B) provides for execution of the certificate of title by the owner, or in this case owners, while A.R.S. § 28–325(E) involves the issuance of a new title when liens and encumbrances involving a vehicle are filed with the Division. Other statutes which bear on this title question are: A.R.S.

§ 28–304(A), "The vehicle division shall file each application for a certificate of title and when satisfied that the application is genuine and regular, and that the applicant is entitled to a certificate, shall register the vehicle and the owner . . . ."; A.R.S. § 28–304(D), which reads:

> D. Except as provided in § 28–325 a person owning any motor vehicle, trailer or semi-trailer may, upon furnishing satisfactory proof to the superintendent of his ownership, procure a certificate of title to the vehicle, whether or not a certificate of title thereto has previously been issued. If the superintendent determines that an applicant for a certificate of title to a motor vehicle, trailer or semi-trailer is not entitled thereto, he may refuse to issue a certificate or to register the vehicle, and for like reason, after notice and hearing, may revoke a registration already made, or an outstanding certificate of title. The notice shall be served in person or by registered mail.

A.R.S. § 28–314(B) which repeats the language of A.R.S. § 28–304(D) above; A.R.S. § 28–314(A) which requires the owner to surrender the certificate of title and registration to the Division when "the owner of a registered vehicle transfers or assigns his title or interest thereto"; and A.R.S. § 28–312, authorizing issuance of a duplicate title, which reads:

> If any number plate, certificate of title, permit or registration card is lost, mutilated or becomes illegible, the person entitled thereto shall make immediate application for and obtain a duplicate or substitute therefor upon furnishing information satisfactory to the division.

Thus, the statutes relating to the issuance of a certificate of title are far more complex than Wallace contends. Indeed, Mr. Bick Quayle, general manager for Wallace and Mr. Bruce Wallace, owner of Wallace, both of whom testified at the administrative hearing, demonstrated that they were completely knowledgeable about the transfer of title procedure, the issuance of a duplicate title, their reliance on the Division to issue a duplicate title only when the

original was lost, and their problem getting title information from the Division.

The above statutes, and others in Title 28, A.R.S., show that the legislature intended, and has created, a comprehensive system to title and register motor vehicles for transfer and tax revenue purposes. They have delegated to the Division the duty to administer the title system. As a part of the system, when motor vehicles are originally sold, certificates of title are issued and vehicles are registered. As a vehicle is sold and resold, this procedure repeats itself throughout the life of each vehicle. If a lien or encumbrance against a particular vehicle is filed with the Division, new title and registration is required and issued to reflect the lien or encumbrance. If a certificate of title is lost, a duplicate title is issued by the Division. Therefore, we must reject Wallace's statutory construction argument as unpersuasive.

Wallace's citation of *Doherty v. Obregon,* 6 Ariz.App. 401, 433 P.2d 52 (1967) in support of its A.R.S. §§ 28–304(B), 28–325(E) argument is also misdirected. In *Doherty,* the former owner of a pickup truck was issued the original certificate of title. He applied to the Division for a duplicate title claiming that the original was lost. In due course the duplicate title issued. He then mortgaged the vehicle and submitted the original "lost" title to the Division for recordation of the lien. The Division title check did not catch the duplication of titles. The former owner thereafter sold the pickup to a car dealer using the duplicate title which showed no lien. He then took the money and ran. The car dealer sold the pickup to the purchaser whose application for a certificate of title was refused because of the recorded lien. Thus, the fraud perpetrated by the former owner on the car dealer was discovered. The purchaser sued the car dealer for rescission of the sale which was granted by the trial court. The judgment was affirmed on appeal by Division 2 of this court. The opinion notes that the car dealer relied on the duplicate title with no encumbrance indicated on it; that A.R.S. § 28–325(B), which provides the sole method for making a lien or encumbrance

effective against a subsequent purchaser without notice, requires that the lien or encumbrance be filed with the Division "accompanied by the certificate of title last issued for the vehicle;" that the court held that the statutes do not contemplate more than one title to a single vehicle and the words "title last issued," in A.R.S. § 28–325(B), were intended to mean "title issued to the last owner"; and that since the purpose of a chattel mortgage was to protect the mortgagee not in possession of the vehicle, and the car dealer had given the purchaser an implied warranty of title pursuant to former A.R.S. § 44–213(3), rescission of the sale of the pickup was a proper remedy for the purchaser.

Implied, but not stated in *Doherty,* is the conclusion that the car dealer was bound by the filed lien at the Division and the notice of lien on the original certificate of title which the dealer never saw. Also implied is a conclusion that the filed lien was effective as to the duplicate title although it did not show the encumbrance as required by A.R.S. § 28–325. Finally, the opinion implies that because the "title issued to the last owner" was the fraudulent former owner of the pickup, and because he was the same person titled by the Division with both the original certificate which showed the lien and duplicate title which did not, the car dealer was charged with notice of the encumbrance and required to bear the loss.

Without approving the dicta in *Doherty,* the facts *sub judice* are distinguishable. First, we have here an original certificate of title issued to a different owner or ownership interest, Rosalie LaPorte. In *Doherty* the certificate of title and duplicate were issued to the same owner. Under the court's reasoning, the "title issued to the last owner" was the same person in *Doherty* while there is a different ownership interest here. Second, in *Doherty* the court was concerned with a validly filed lien or encumbrance and with protecting the mortgagee who had fully complied with the statutes. In the instant case we have no lien or encumbrance, only the question of which

certificate of title should prevail. Third, rescission was requested and granted in *Doherty* based on former A.R.S. § 44–213(3), while validity of title is involved *sub judice*. The Texas case, *South Texas Bank v. Renteria*, 523 S.W.2d 780 (Tex.Civ.App. 1975), also relied on by Wallace, involves a factual situation similar to *Doherty* and it is therefore not particularly enlightening.

■ Wallace also cites *Winship v. Standard Finance Co.*, 40 Ariz. 382, 12 P.2d 282 (1932), where a forged certificate of title did not pass title, and *Vannoy Chevrolet Co. v. Baum*, 260 Iowa 1011, 151 N.W.2d 515 (1967), where a dealer misrepresented the fact that he had lost the title and obtained a duplicate title, and sold the car. The court held that the original title governed. *Winship* represents the historic rule that forgery passes no title. *Vannoy* is similar to the instant case. However, there the finder of fact found that the dealer had misrepresented the fact in order to obtain a duplicate title, while here the finder of fact found that Mrs. Howe had not misrepresented that the original title was "lost."

Wallace's next argument is that it was not obligated under law to search the motor vehicle records to determine the condition of title before purchasing the Toyota from James Howe. Wallace argues that since A.R.S. § 28–325(E) provides that the title certificate itself is constructive notice of a lien or encumbrance, the same constructive notice of title is applicable to the original certificate of title per A.R.S. § 28–313 and its prior arguments. Therefore, since only the original certificate of title tendered Wallace could charge it with constructive notice of the status of title and that notice was that James Howe or Mrs. Howe owned the car, the judgment of the trial court should be affirmed.

In support of this argument, Wallace cites cases cited in support of earlier arguments such as *Doherty*, and, in addition, *Kearby v. Western States Securities Co.*, 31 Ariz. 104, 250 P. 766 (1926). As noted above, *Doherty* is not applicable and *Kearby* predates our title statutes.

Wallace does cite *Pacific Finance Corporation v. Gherna*, 36 Ariz. 509, 287 P. 304 (1930) for the proposition that a certificate of title is prima facie evidence of ownership. We believe this to be the law. It is also dispositive of this argument.

In *Silva v. Traver*, 63 Ariz. 364, 162 P.2d 615 (1945), our supreme court said:

It is conceded, and is of course the law in this state, that proof or admission of ownership is *prima facie* evidence that the driver of a vehicle causing damage by its negligent operation is the servant or agent of the owner and using the vehicle in the business of the owner. *Baker v. Maseeh*, 20 Ariz. 201, 179 Pac. 53. But "*prima facie* evidence," so called, is, strictly, no evidence at all. It is only a presumption of law. *Barton v. Camden*, 147 Va. 263, 137 S.E. 465. It has been uniformly so treated and denominated by this court. *Baker v. Maseeh, supra; Lutfy v. Lockhart*, 37 Ariz. 488, 295 Pac. 975. And such presumptions are mere arbitrary rules of law, to be applied in the absence of evidence. Whenever evidence contradicting a legal presumption is introduced the presumption vanishes. *Seiler v. Whiting*, 52 Ariz. 542, 84 Pac.(2d) 452; *Flores v. Tucson Gas, Elec. L. & P. Co.*, 54 Ariz. 460, 97 Pac.(2d) 206.

63 Ariz. at 367–68, 162 P.2d at 616–17.

In *Coffey v. Williams*, 69 Ariz. 126, 210 P.2d 959 (1949), our supreme court rejected an argument similar to Wallace's that the certificate of title obtained from the state was the prima facie title and could not be rebutted in a replevin action. The court held that the title was subject to rebuttal evidence. *See also* Udall, *Arizona Law of Evidence* § 191 (1st ed. 1960). In *Price v. Universal C.I.T. Credit Corp.*, 102 Ariz. 227, 427 P.2d 919 (1967), our supreme court upheld the sale of automobiles to buyers without certificates of title as against the financier of the dealer that held the certificates of title.

■ Thus, we find the law clear that a certificate of title is merely prima facie evidence of the title to a motor vehicle. In an action such as this one, such evidence

may be rebutted. Here the record before the administrative hearing officer contains substantial evidence that the prima facie title was rebutted and the administrative decision, in effect, so held. On that factual basis, without more evidence, the decision should have been affirmed by the trial court. Whether or not Wallace is required to search the records of the Division when purchasing a car involves business judgment. Mr. Wallace testified that in his long career as a dealer this was the first time such a thing had happened to him. From this testimony we can only conclude that the system works reasonably well. We do note that most of the cases cited by both sides involve dealers or salesmen knowledgeable with title transfer. Here, for example, James Howe had worked for a car dealer across the street from Wallace and had discussed the sale of the Toyota with Mr. Quayle of Wallace one month before he appeared and sold the car to Wallace.

Wallace's final argument, estoppel, as noted before, was not timely raised and is deemed waived.

The judgment of the trial court is reversed and this matter is remanded to the trial court with directions to reinstate and affirm the administrative decision involved herein.

MEYERSON, Judge, specially concurring:

Even assuming that the dissent is correct that the trial court properly considered the estoppel argument, in my view the evidence overwhelmingly demonstrates that Mrs. Howe was not estopped from asserting title to the vehicle. Mrs. Howe did everything she possibly could to protect herself against misuse of the title. She acted with promptness and persistence in securing the duplicate title. Wallace, on the other hand, paid for a vehicle which was only three months old without ever questioning the seller, Mr. Howe. Wallace failed to ask to see the vehicle registration; had the salesman done so he would have discovered that there was no registration in the vehicle. It would have been a simple matter for Wallace to call Mrs. Howe to ascertain her consent to the sale. This was not done. Finally, had Wallace checked the records at the Motor Vehicle Department, it would have been discovered that the title had been changed one month previously and placed in the name of Mrs. Howe alone. "When one of two persons must—under these circumstances—bear the loss, it should fall on the one whose business is the handling of such transactions, rather than upon the one who enters into an isolated purchase of an automobile." *Price v. Universal C.I.T. Credit Corp.,* 102 Ariz. 227, 231, 427 P.2d 919, 923 (1967).

The "estoppel" cases relied upon by the dissent are easily distinguishable and demonstrate that the innocent actions of Mrs. Howe in placing the initial title in both her name and her husband's name are plainly insufficient to invoke the doctrine of estoppel against her. For example in *Kearby v. Western States Securities Co.,* relied upon by the dissent, the court held that the finance company (the owner of the vehicle) was estopped to assert its title because it "clothed" the seller with the power to resell the vehicle. The car was driven by a salesman for the seller and carried a dealer's license plate used by the seller. The seller called upon the purchaser at the purchaser's home to demonstrate the vehicle and drove the vehicle to the seller's place of business and offered the vehicle for sale at a discount because it had been used as a demonstrator. In *General Motors Acceptance Corp. v. Hill,* 95 Ariz. 347, 390 P.2d 843 (1964), estoppel was applied because the seller, who retained a lien on the vehicle, delivered title to the purchaser in violation of Pennsylvania law which required that the lien holder retain title until the entire amount of the lien is fully paid. When the purchaser sold the vehicle to the "innocent" third party, the original seller was held to be estopped from asserting title because of non-compliance with the Pennsylvania statute. Finally, in *Kelsoe v. Grouskay,* 70 Ariz. 152, 217 P.2d 915 (1950), the owner of the vehicle relinquished possession of the car to the purchaser and delivered the certificate of title endorsed in blank to the

purchaser. These actions were held to estop the owner from asserting title. These cases easily demonstrate that Mrs. Howe took no action in this case which would amount to such an estoppel.

Having determined that Mrs. Howe was not estopped from asserting her ownership of the vehicle, it must now be determined whether her duplicate title superseded the original title to the vehicle which Mr. Howe presented to Wallace. As the majority opinion points out, the applicable statutes are somewhat confusing. Under the circumstances, great weight must be given to the determination of the administrative agency charged with enforcing the motor vehicle statutes. The Motor Vehicle Department ruled that the duplicate title issued to Mrs. Howe was valid and that the original title issued to both Mr. and Mrs. Howe was null and void. In my judgment, the trial court erred in ignoring that finding. Thus, because Mrs. Howe had title to the vehicle and did not clothe Mr. Howe with any authority to sell the vehicle on her behalf, and further because Wallace was in the best position to avoid the loss, I agree with the conclusion expressed in the majority opinion that the decision of the trial court should be reversed and that the order of the administrative agency be reinstated.

HAIRE, Presiding Judge, dissenting:

I would affirm the judgment entered by the trial judge. In my opinion the evidence overwhelmingly supports the estoppel principle upon which the trial court's judgment was based. The majority apparently does not dispute the sufficiency of the evidence to support estoppel, but rather concludes that the estoppel issue was not properly before the trial court because estoppel was not urged when the matter was presented before the administrative agency's hearing officer. I would agree with the majority's conclusion were it not for the fact that in this case, Wallace Imports was entitled to a *de novo* trial in the superior court and thus could raise any legal issues which it deemed pertinent, even though such issues were not raised before the administrative agency.

The scope of review from an administrative decision by the superior court is governed by A.R.S. § 12–910, which at all times pertinent to this appeal provided in part:

"A. ... The hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to a finding, order, determination or decision of the administrative agency shall be heard by the court, except in the event of a trial de novo or in cases where in the discretion of the court justice demands the admission of such evidence.

"B. *The trial shall be de novo* if trial de novo is demanded in the complaint ... and if no hearing was held by the agency or the proceedings before the agency *were not stenographically reported* so that a transcript might be made...." (Emphasis added).

It is undisputed that while the agency hearing in this matter was tape recorded and a transcription made of that recording, it was not stenographically recorded. The legislature recently amended A.R.S. § 12–910(B) to allow both stenographic and mechanical recording of a hearing to suffice for purposes of a record on appeal. The stated purpose of the amendment was for "permitting use of tape recorders or other recording devices by [the] state...." See Laws 1980, Ch. 72, § 1. The bill containing this amendment also amended A.R.S. § 38–424 to permit the recording of various public meetings by the use of tape recorders "in lieu of reporters or stenographers." It appears clear that the legislature distinguished between a "stenographically recorded" and a "mechanically recorded" hearing. We presume that this amendment was intended to change existing law. *Trump v. Badet,* 84 Ariz. 319, 327 P.2d 1001 (1958); *Needel v. Needel,* 15 Ariz.App. 471, 489 P.2d 729 (1971). Thus, prior to the 1980 amendment, it is reasonable to conclude

that a mechanically reported hearing did not equate to a stenographically reported hearing so as to defeat a party's right to a trial *de novo* pursuant to A.R.S. § 12–910(B).

A trial *de novo* having been appropriately requested, the superior court was free to conduct a trial *de novo* and take all evidence presented by the parties and form its own independent conclusions based on such evidence. *See Davis v. Brittain,* 89 Ariz. 89, 358 P.2d 322 (1960), *modified,* 92 Ariz. 20, 373 P.2d 340 (1962). No new evidence was received by the trial court in the instant case. However, the court did, as previously noted, consider the issue of estoppel raised before the trial court by Wallace Imports. In my opinion the trial court did not err in considering this new issue in the *de novo* proceeding.

Pursuant to A.R.S. § 12–910(A), the superior court hearing and determination "shall extend to all questions of law and fact presented by the entire record before the court." Further, it is clear that a court can make independent determinations of points of law decided by the administrative agency. *See Mountain States Telephone & Telegraph Co. v. Sakrison,* 71 Ariz. 219, 225 P.2d 707 (1950). *See also* 3 Arizona Appellate Handbook, § 32.3.9.2.6. Since under the procedural posture of this case, the court could have taken new evidence and could have made independent factual conclusions, in my opinion it was not precluded from considering a legal issue newly raised in the pleadings based on undisputed facts already in the record.

Although unclear, it appears that the majority holds that Wallace Imports did not properly assert its right to a trial *de novo,* or alternatively, waived that right by its failure to object to the record and transcript certified to the superior court by the defendant agency as a part of its answer. I see no merit in the majority's position in that regard. First, it is clear that Wallace

Imports demanded a trial *de novo* in its complaint. This is precisely the procedure required by statute. *See* A.R.S. § 12–910(B). Additionally, A.R.S. § 12–909(B) specifically authorizes the defendant agency to certify such portions of the record as it deems material. Thus, there is no legal basis for an objection by Wallace Imports to the certified record.

In the trial court proceedings on its motion for judgment on the pleadings, Wallace Imports specifically urged to the court that it was entitled to a trial *de novo* because the proceedings had not been stenographically recorded. Therefore, the trial court was fully advised concerning the basis of Wallace's claim of entitlement to a trial *de novo.* The estoppel issues involved in this proceeding were bought before the trial court by Wallace Imports' motion for judgment on the pleadings.[5] It appears that the majority considers this an inappropriate motion: "Such a motion is a civil pretrial motion which neither comports with the Administrative Review Act, nor with A.R.S. § 12–910 . . . ." Again, I am at a loss to understand the majority's reasoning in that regard. A.R.S. § 12–914 provides as follows:

"Where applicable, the rules of civil procedure in superior courts . . . shall apply to all proceedings [under the Administrative Review Act] except as otherwise provided in this article."

The motion filed by Wallace Imports, whether considered as a motion for judgment on the pleadings or as a motion for summary judgment, is specifically authorized by the Rules of Civil Procedure. *See* Rule 12(c) and Rule 56, Rules of Civil Procedure, 16 A.R.S. In its consideration of the Administrative Review Act, the Arizona Appellate Handbook states that the Rules of Civil Procedure are generally applicable in the trial court's review of agency decisions, *see* § 32.3.7.1. The Handbook also

---

**5.** Since the motion for judgment on the pleadings brought to the trial court's attention factual matters contained in both the agency's answer and the certified record, it appears that, pursuant to Rule 12(c), Rules of Civil Procedure, the trial court treated the motion as one for summary judgment. In response, appellant filed her own "Cross-Motion for Summary Judgment."

suggests that in such proceedings a decision by the trial court on the issues presented may appropriately be precipitated by the filing of "a motion for judgment, which might properly be denominated a motion for summary judgment, motion for judgment on the record, or motion for judgment under A.R.S. § 12–910." *See* § 32.3.7.3.4, at 32–11. In my opinion, the issues were properly presented to the trial court by Wallace Imports' motion for judgment on the pleadings and appellant's cross-motion for summary judgment, and the trial court properly found that as a matter of law appellant was estopped from asserting the validity of her title to the vehicle under the evidence presented in this case.

In essence, the dispute over the subject vehicle is between two innocent parties. The question before the trial court was who should bear the loss—appellant in losing the Toyota because of the duplicity of her husband or Wallace Imports in having to return the Toyota and lose $5,500.00 paid to the errant husband in reliance upon his title to the vehicle.

The principle of equitable estoppel under such circumstances is that when one of two innocent persons must suffer, the person who made possible the loss must bear the burden as against the person who acted in good faith without knowledge of the facts and changed his position to his detriment. *See In re Estate of Milliman,* 101 Ariz. 54, 415 P.2d 877 (1966); *General Motors Acceptance Corp. v. Hill,* 95 Ariz. 347, 390 P.2d 843 (1964).

It is my opinion that the undisputed facts support the conclusion that appellant made possible the loss by initially obtaining title to the vehicle in a manner which gave her errant husband the right to transfer the vehicle and by providing him with keys that enabled him to acquire physical possession of the vehicle. The record fully supports the trial court's conclusion that Wallace Imports acted in good faith without knowledge of the facts of the relationship between appellant and her errant husband, or knowledge of the existence of a duplicate title and the new title issued solely in appellant's name.

Appellant argues that Wallace Imports had constructive notice of the facts by virtue of the motor vehicle records and had an obligation to check the motor vehicle records whereupon it would have discovered that appellant had obtained a subsequent title to the vehicle in her own name.[6] However, under Arizona's statutory scheme concerning title to motor vehicles, it is the title certificate itself, not the Motor Vehicle Division records, which provide constructive notice of ownership. *See* A.R.S. § 28–325(E).[7] Further, there was testimony in the record to support the conclusion that the practice of the Motor Vehicle Division is not to accept phone inquiries regarding the status of title to an automobile except in very limited circumstances. The division requires that requests for such information be in writing. Therefore, it is the custom and practice of automobile dealers in Arizona to rely on the certificate and not to make calls to the Motor Vehicle Division when they purchase cars or take cars in trade. Consequently, I would find that Wallace Imports had no duty to search the motor vehicle records.

The principle of estoppel in a title situation such as this arises when a party either willingly or negligently clothes another party with either actual title or indicia of title sufficient to allow the latter party to vest title to that property in an innocent pur-

---

**6.** I do not find it necessary to determine whether the original certificate of title which was arguably not "lost" took precedence over both the duplicate title and the title issued in appellant's individual name because I find the issue of estoppel determinative in this case. Therefore, I express no opinion with respect to that matter.

**7.** This section makes filing and issuance of the *certificate* constructive notice and makes notice effective when the previously issued *certificate* or application for certificate and accompanying documents evidencing any lien or encumbrance are *executed* if filed with MVD within 10 days of execution irrespective of what MVD records show within that 10 day period. Thus, constructive notice is dependent upon the certificate of title not the MVD files.

chaser without notice. *See Kearby v. Western States Securities Co.,* 31 Ariz. 104, 250 P. 766 (1926). In that case, an automobile dealer sold a car to a salesman on a note and conditional sales contract. Title to the car remained with the finance company which held the note and contract until the price was paid. The finance company permitted the dealer to retain the automobile. The salesman then sold the car to Kearby who made payments to the dealership, not the finance company. When the finance company did not receive car payments from the dealer it sought to replevy the car from Kearby. On appeal, the supreme court held that while the finance company held actual title to the car and had not given the salesman actual power to sell it,

> "[I]t clothed them [the dealer and salesman] with the apparent power to do so, and ... anyone dealing with either or both of them regarding the car would be justified in assuming that the Motor Company owned it and had a right to sell it." 31 Ariz. at 113, 250 P. at 768.

The court thus concluded that the finance company was estopped to assert its title. The court went on to note that even though the finance company had recorded the conditional sales contract, it did not constitute notice to the purchaser such as to defeat an estoppel.

In *Kearby,* the court also held that the well-settled principle that one can transfer no better or superior title than he himself has did not apply. Rather, the court found an exception, stating:

> "Where the true owner holds out another or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third persons are thus led into dealing with such apparent owner, they will be protected.

Their rights, in such cases, do not depend upon the actual title or authority of the person with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the person making the transfer." 31 Ariz. at 114, 250 P. at 769.

*See also Price v. Universal C.I.T. Credit Corp.,* 102 Ariz. 227, 427 P.2d 919 (1967);[8] *General Motors Acceptance Corp. v. Hill, supra; Dissing v. Jones,* 85 Ariz. 139, 333 P.2d 725 (1958); *Kelsoe v. Grouskay,* 70 Ariz. 152, 217 P.2d 915 (1950); *Theriac v. McKeever,* 405 So.2d 354 (La.App.1981); *Skates v. Lippert,* 595 S.W.2d 22 (Mo.App. 1979); *cf. Mabe v. Dillon,* 46 N.C.App. 340, 264 S.E.2d 796 (1980).

Turning now to the majority opinion, I see little relevance in the extended statutory discussion set forth therein. Simply stated, there are no statutory provisions which directly bear on or furnish a clear resolution of the issues presented in this appeal. However, even if we were to assume direct statutory support for a holding that a duplicate title obtained through statutory procedures generally supersedes the original certificate of title, I would hold that appellant's actions in clothing her errant husband with the original certificate of title as reflected in this record would estop her from asserting title against Wallace Imports, an innocent good faith purchaser for value without prior notice of appellant's claims.[9]

In conclusion, for the reasons stated, I would affirm the judgment entered by the trial court.

---

**8.** Appellant has cited this case for the proposition that as between the isolated purchaser and an automobile financier, the financier who had the expertise to protect himself should absorb the loss. However, in *Price* the financier of certain individual purchasers who financed their purchases without obtaining certificate of title were held to prevail against Price, the financier of the dealer, because Price had clothed the dealer with the indicia of authority to vest title in others. Although Price held the certificates of title, the court held he was estopped from asserting title against the individual purchasers and their financier.

**9.** I recognize that a different holding might well be required if, prior to the purchase by Wallace Imports, appellant had utilized the duplicate title to transfer the vehicle to another innocent good faith purchaser for value.