BANK OF ALAMANCE v. WILLIAM LEE ISLEY, SR. AND JAMES SAMMY KERNODLE

No. 8415SC739

(Filed 7 May 1985)

1. **Automobiles and Other Vehicles § 5.2; Uniform Commercial Code § 42— security interest in automobile—certificate of title statutes govern**

Where an automobile is sold in contemplation of regular use on the highway, the vehicle is subject to the certification of title statute, G.S. 20-58 *et seq.*, and the provisions of Art. 9 of the U.C.C. pertaining to the filing, perfection and priority of security interests do not apply. G.S. 25-9-302(3)(b).

2. **Automobiles and Other Vehicles § 5.2— sale of automobile—delayed perfection of security interest—subsequent innocent purchaser for value**

The trial court properly concluded that defendant Kernodle has the superior right and title to the subject vehicle over plaintiff Bank of Alamance where defendant Isley, from whom defendant Kernodle purchased the car, had financed the vehicle through plaintiff but plaintiff had failed to take possession of the manufacturer's certificate of origin and did not perfect its security in-

terest until after defendant Kernodle purchased the vehicle from Isley for value. A late perfected security interest is not retroactively valid against an innocent third party who acquired the automobile for value. G.S. 20-52.1(c), G.S. 20-58.2, G.S. 25-9-307(1).

APPEAL by plaintiff from *Lee, Judge.* Judgment entered 6 April 1984 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 7 March 1985.

In this civil action, the plaintiff, Bank of Alamance, sues for claim and delivery, asking for the return of an automobile in the possession of defendant James Sammy Kernodle and a money judgment against defendant William Lee Isley, Sr. The uncontroverted facts may be summarized as follows: On 28 September 1981, Nissan Motor Corporation issued a manufacturer's statement of origin to Billy Gordon Datsun, Inc., for a 1981 Datsun 280ZX automobile. On 24 February 1982, Billy Gordon Datsun sold the automobile to Bill Isley Auto Sales, Inc., for the purchase price of $13,679.00. The original manufacturer's certificate of origin for the automobile was given to defendant Isley, owner of Bill Isley Auto Sales, by Billy Gordon Datsun, with the first assignment on the back thereof incomplete.

Later that same day, defendant Isley took the automobile to a loan officer of the Bank of Alamance and requested the plaintiff bank to lend him the sum of $11,743.00 to purchase the automobile from his dealership. Isley produced the original manufacturer's statement of origin with the incomplete assignment, a non-negotiable copy of a check drawn on the account of Bill Isley Auto Sales, payable to Billy Gordon Datsun, for $14,679.00, $1,000.00 greater than the sale price from Billy Gordon Datsun, and the window sticker. The plaintiff bank made the loan and executed a cashier's check for $11,743.00 to William L. Isley and Bill Isley Auto Sales. The bank did not retain the manufacturer's certificate of origin; instead, Isley was allowed to retain the title documents for the purpose of obtaining execution by Billy Gordon Datsun and taking them to the Department of Motor Vehicles. The bank sent two notices, 2 April and 30 April 1982, requesting Isley to deliver the title certificate with the bank's lien recorded thereon. Isley obtained a duplicate manufacturer's certificate of origin from Nissan Motor Corporation and sent it to the Department of Motor Vehicles, and title documents noting William Lee

Isley, Sr., as owner with a lien in favor of the Bank of Alamance were issued on 20 May 1982.

Meanwhile, Bill Isley Auto Sales offered the automobile for sale as a new car, and on 29 March 1982, defendant Kernodle and his wife purchased the automobile from Bill Isley Auto Sales for $14,200.00. Isley, who handled the paperwork with regard to the sale and transfer of title, sent the original certificate of origin to the Department of Motor Vehicles after having changed, on the original certificate of origin, one digit of the serial number. Kernodle did not check the serial number on the car against the number on the sales documents. Kernodle paid $700.00 down with the balance of the financing assigned to Wachovia Bank and Trust Company. The Kernodles' title was based on this original manufacturer's statement of origin which was assigned on 24 February 1982 from Billy Gordon Datsun to Bill Isley Auto Sales. The second assignment noted on the title transfer form was from Bill Isley Auto Sales to James Sammy Kernodle and wife with a lien in favor of Wachovia Bank and Trust Company.

Isley made the monthly payments to plaintiff Bank until 26 December 1982 at which time plaintiff made demand for payment or return of the automobile. Upon discovering that the automobile was not in Isley's possession, the bank instituted a civil action seeking a return of the automobile from Kernodle and a money judgment against Isley. Defendant Isley did not answer and summary judgment was entered against him; no appeal was taken. Defendant Kernodle filed an answer denying plaintiff's title to the automobile. A non-jury trial was held on the claim and delivery proceeding, and judgment was entered in favor of defendant Kernodle. Plaintiff appealed.

*Craig T. Thompson, for plaintiff appellant.*

*Holt, Spencer, Longest & Wall, by Frank A. Longest, Jr., for defendant appellee.*

MARTIN, Judge.

Plaintiff's contentions on appeal challenge the trial court's findings of fact and conclusions of law which determine that defendant Kernodle has superior right and title to the automobile in his possession over the plaintiff bank. As such, the sole question presented by this appeal is one of priority of claims. Because

a late-perfected security interest is not retroactively valid against an innocent third party who acquired the automobile for value, we affirm the judgment of the trial court.

[1] The Uniform Commercial Code, as adopted in North Carolina, provides the general law for transactions in consumer goods and the creation of security interests in those goods. G.S. 25-2-102; G.S. 25-9-102. However, the provisions of Article 9 of the Uniform Commercial Code pertaining to the filing, perfection and priority of security interests do not apply to a security interest in any personal property required to be registered pursuant to Chapter 20 of the General Statutes, entitled "Motor Vehicles," unless such property is held as inventory and the security is created by the inventory seller. G.S. 25-9-302(3)(b). The automobile in this case was sold in contemplation of regular use on the highway. Once a sale of an automobile has occurred contemplating regular use, whether it be a sale of a complete or limited interest, the vehicle is then subject to North Carolina's certificate of title statute, G.S. 20-58 et seq. "[A] security interest in a vehicle of a type for which a certificate of title is required shall be perfected only as" provided in this statute. G.S. 20-58. This statute provides a comprehensive system for central recordation of ownership, security interests and liens in all motor vehicles registered and regularly in use in this State. Thus, Chapter 20 of the General Statutes is applicable in determining any issues regarding the perfection of a security interest in the automobile in this case.

[2] Since filing under the provisions of Article 9 is neither necessary nor effective to perfect a security interest in this case, we turn to an examination of priorities as governed by Chapter 20 on motor vehicles. G.S. 20-52.1(c) provides that

> where a security interest is obtained in the motor vehicle from the transferee in payment of the purchase price or otherwise, the transferor shall deliver the manufacturer's certificate of origin to the lienholder and the lienholder shall forthwith forward the manufacturer's certificate of origin together with the transferee's application for certificate of title and necessary fees to the Division.

According to G.S. 20-58.2, perfection of the security interest in a motor vehicle occurs when the application and proper fee are delivered to the Department of Motor Vehicles. *See also Fer-*

guson v. Morgan, 282 N.C. 83, 191 S.E. 2d 817 (1972). In order to obtain protection of a lien as of the lien date, the application must be delivered to the Department of Motor Vehicles within ten days; if the delivery is not made within the ten day period, the security interest is perfected as of the date of delivery. G.S. 20-58.2.

The evidence revealed that the loan officer of the Bank of Alamance failed to take possession of the manufacturer's certificate of origin upon making the loan to defendant Isley on 24 February 1982. As a result, plaintiff's lien was not perfected until the date of delivery of the application to the Department of Motor Vehicles, 20 May 1982, a time subsequent to defendant Kernodle's purchase of the automobile for value and Wachovia Bank and Trust Company's perfection of its security interest in the automobile. It follows that at the time defendant Kernodle purchased the vehicle from Bill Isley Auto Sales, the Bank of Alamance had not perfected its lien. In fact, plaintiff bank had provided Bill Isley Auto Sales, through defendant Isley, with possession of the vehicle and all ownership documents which were incomplete as to a transfer of title and which did not show that the bank was a lienholder when defendant Kernodle purchased the vehicle for value.

While G.S. 25-9-307(1) provides that "[a] buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence," we believe this provision of the Uniform Commercial Code is not applicable in this case. This provision is not operative in instances where perfection of the security interest is required under Chapter 20 on motor vehicles. The operation of G.S. 25-9-307(1) in this case is expressly excluded by G.S. 25-9-302(3)(b). See Amended Official Comment 3, G.S. 25-9-307. The security interest in a vehicle for which a certificate of title is required under Chapter 20 shall be perfected and valid against subsequent creditors of the owner, transferees, and holders of security interests and liens on the vehicle by compliance with the provisions of G.S. 20-58 et seq. While we believe these provisions adhere to the protection of security interests against third parties who acquire rights in a vehicle with actual notice of the security interest or without giving value in the interim period between creation of a security

interest and late perfection of the interest, we hold that a late-perfected security interest is not retroactively valid against an innocent third party who acquired the automobile for value. (For other cases so holding, *see* 79 C.J.S. Supp., *Secured Transactions*, § 59, p. 63.)

The evidence showed without dispute that defendant Kernodle had no actual knowledge of plaintiff's security interest until the Bank of Alamance demanded possession of the car. His constructive notice dated from 20 May 1982 when the application for a certificate of title was belatedly delivered to the Department of Motor Vehicles and the security interest thus perfected. G.S. 20-58.2. Under our interpretation of G.S. 20-58.2, defendant Kernodle, whose rights in the vehicle dated from 29 March 1982, had priority, and the trial court properly concluded that "the Defendant, James Sammy Kernodle, has superior right and title to subject vehicle in his possession over the Bank of Alamance." Its judgment is

Affirmed.

Judges WEBB and PHILLIPS concur.