PEOPLES SAVINGS AND LOAN ASSOCIATION v. CITICORP ACCEPTANCE COMPANY, INC.

No. 9011SC1183

(Filed 20 August 1991)

**Automobiles and Other Vehicles § 265 (NCI4th) — mobile home — perfection of security interest — first lien not lost by attaching mobile home to realty**

The trial court properly concluded that the notation of a security interest on the certificate of title of a manufactured home pursuant to N.C.G.S. § 20-58 *et seq.* perfected the security interest in the home, and defendant's security interest did not lose its priority once the owner of the home removed the tongue, wheels, and axles, placed the home on brick and block foundation walls, and attached a front porch, rear deck, and septic system to the mobile home, since N.C.G.S. § 20-4.01(23) states that a "motor vehicle" includes "every vehicle designed to run upon the highway"; the North Carolina Supreme Court has held that a mobile home is designed to be operated upon the highways; and the word "designed" refers to the initial manufacturing design of a mobile home.

**Am Jur 2d, Secured Transactions § 157.**

PEOPLES SAVINGS AND LOAN ASSN. v. CITICORP ACCEPTANCE CO.

[103 N.C. App. 762 (1991)]

APPEAL from order entered 15 August 1990 by *Judge Robert L. Farmer* in JOHNSTON County Superior Court. Heard in the Court of Appeals 5 June 1991.

On 28 March 1980, Iris Pennington purchased a mobile home. To finance the purchase, she signed a security agreement for a fifteen year mortgage provided by defendant. As purchaser of the mobile home, Pennington applied for a certificate of title from the Department of Motor Vehicles. G.S. 20-50, 20-52. At the time of Pennington's application, defendant placed a notation of lien on the certificate of title. G.S. 20-58. Defendant was listed as the first and only lienholder on the certificate of title issued to Pennington on 1 May 1980. Pennington transported the mobile home to Johnston County and placed it on a 3.4 acre tract of land purchased by her in 1979. The tongue, wheels, and axles were removed. Pennington placed the mobile home on brick and block foundation walls and attached a front porch, rear deck, and septic system to the mobile home.

On 13 August 1985, Iris Pennington Easter (the original purchaser) and her husband Gerald D. Easter executed a promissory note for a principal debt of $33,126.49 plus interest in favor of Freedlander, Inc. The Freedlander note was secured by a deed of trust on the 3.4 acre tract of land in Johnston County. The records of the Johnston County Tax Administrator's office for the 3.4 acre lot contained both a drawing of the dwelling which was labelled "mobile home" and a listing of the dwelling as a "mobile home" under the "Summary of Buildings." Freedlander did not contact the Department of Motor Vehicles to determine whether any prior liens were listed on the certificate of title nor did Freedlander record a lien in its own name on the certificate of title at this time.

The Easters made none of the payments required by the Freedlander note and also stopped making payments on their debt to defendant. On 16 March 1986, defendant repossessed the mobile home from the Johnston County site pursuant to its security interest recorded on the certificate of title issued 1 May 1980. On 20 November 1987, Freedlander conducted a foreclosure sale on the 3.4 acre tract of land pursuant to its deed of trust and received a high bid of $12,000. Plaintiff received an assignment of Freedlander's interest under the Freedlander note.

On 12 December 1988, plaintiff filed a complaint against defendant. Plaintiff alleged that it was unable to satisfy the indebtedness it originally secured by the deed of trust, leaving a $29,431.33 deficiency upon foreclosure. Plaintiff sought damages for conversion, trespass, and unfair trade practices.

Defendant moved for summary judgment on 10 July 1989. This motion was denied on 7 September 1989.

On 24 July 1990, plaintiff moved for summary judgment on the issue of liability. On 15 August 1990, plaintiff's motion for partial summary judgment was denied. The trial court made the following conclusion of law: "A security interest in a vehicle of a type for which a Certificate of Title is required shall be perfected only as provided in [G.S.] Chapter 20. Chapter 20 is applicable in determining any issues regarding the perfection of a security interest in the mobile home in this case." Plaintiff appeals.

*Nichols, Miller & Sigmon, P.A., by R. Bradley Miller, for plaintiff-appellant.*

*Moore & Van Allen, by Robert D. Dearborn, for defendant-appellee.*

EAGLES, Judge.

On the merits, this case involves a priority dispute between two parties claiming a security interest in a mobile home. The issue presented by this appeal is whether the trial court erred in denying plaintiff's partial summary judgment motion. Plaintiff argues that the trial court erred in "concluding that the notation of a security interest on the certificate of title of a manufactured home perfected the security interest in the home once the home became a fixture." We disagree with plaintiff and affirm the trial court's denial of plaintiff's motion for partial summary judgment.

Plaintiff argues that the order denying plaintiff's motion for partial summary judgment denied plaintiff a jury trial and "effectively determined the action" in favor of defendant. We agree. We note that *usually* "the denial of a motion for summary judgment is a non-appealable interlocutory order." *DeArmon v. B. Mears Corp.,* 312 N.C. 749, 758, 325 S.E.2d 223, 230 (1985). However, here we find that the order affects a substantial right and is appealable under G.S. 1-277 and 7A-27. *Nasco Equipment Co. v. Mason,* 291 N.C. 145, 148, 229 S.E.2d 278, 281 (1976) (allowing review on merits

from partial summary judgment order in a case involving priority of claims between two competing creditors).

Under our statutes, mobile homes are defined as motor vehicles. G.S. 20-4.01(23) defines a "motor vehicle" as "[e]very vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle." Our Supreme Court has held that "[a] mobile home is classified by statute as a motor vehicle. . . . A mobile home is designed to be operated upon the highways; and an owner who intends to so operate it is required to make application to the Department of Motor Vehicles for, and obtain, the registration thereof and issuance of a certificate of title for such vehicle. G.S. 20-50; G.S. 20-52." *King Homes, Inc. v. Bryson*, 273 N.C. 84, 88-89, 159 S.E.2d 329, 332 (1968). Here, the purchaser of the mobile home received the certificate of title on 1 May 1980.

G.S. 20-58 provides that "a security interest in a vehicle of a type for which a certificate of title is required shall be perfected *only* as hereinafter provided." (Emphasis added.) "A security interest in a mobile home is subject to the same perfection requirements as is an automobile." *In re Carraway*, 65 Bankr. 51, 55 (E.D.N.C. 1986). G.S. 20-58.2 provides that perfection of a security interest in a motor vehicle occurs when the application and proper fee are delivered to the Department of Motor Vehicles. Here, defendant perfected its security interest on 11 April 1980. Accordingly, defendant was listed as the first and only lienholder on the certificate of title issued to the purchaser on 1 May 1980.

Defendant's security interest, therefore, was already perfected when Freedlander received its promissory note from the Easters on 13 August 1985. "The security interest in a vehicle for which a certificate of title is required under Chapter 20 shall be perfected and valid against subsequent creditors of the owner, transferees, and holders of security interests and liens on the vehicle by compliance with the provisions of G.S. 20-58 *et seq.*" *Bank of Alamance v. Isley*, 74 N.C. App. 489, 493, 328 S.E.2d 867, 870 (1985). Plaintiff disagrees and argues that defendant's security interest lost its priority because once Pennington "made the home a fixture [she] no longer intended to operate it upon a highway." We disagree with plaintiff. G.S. 20-4.01(23) specifically states that a "motor vehicle" includes "every vehicle designed to run upon the highway" and our Supreme Court in *King Homes, Inc. v. Bryson*, 273 N.C.

84, 159 S.E.2d 329 (1968), held that "[a] mobile home is designed to be operated upon the highways" and is thus classified as a motor vehicle. In order to move the mobile home to Johnston County, the purchaser was required to have a certificate of title, which she applied for and received. Defendant properly perfected its security interest which is valid against subsequent creditors such as plaintiff. *Bank of Alamance v. Isley*, 74 N.C. App. 489, 328 S.E.2d 867 (1985). We note with approval the holding of *General Electric Credit Corporation v. Nordmark*, 68 Or. App. 541, 684 P.2d 1, *review denied*, 297 Or. 601, 687 P.2d 795 (1984), a case which also involved the priority of security interests in a mobile home. After concluding that under its statutes the word "designed" referred to the initial manufacturing design of a mobile home, the Oregon court held that despite the fact that the mobile home was attached to realty, the structure "was and remained a 'mobile home' " because "a building that is a mobile home as it leaves the manufacturer probably 'is forever a mobile home.' " *Id.* at 545, 684 P.2d at 3 (quoting *Clackamas County v. Dunham*, 282 Or. 419, 426, 579 P.2d 223, 226, *appeal dismissed*, 439 U.S. 948, 99 S.Ct. 343, 58 L. Ed. 2d 340 (1978) ). Despite plaintiff's argument, the assumption that Pennington "no longer intended to operate [the mobile home] upon the highway" does not nullify defendant's properly perfected security interest in the mobile home. Furthermore, under our statutes even "[t]he cancellation of a certificate of title shall not, in and of itself, affect the validity of a security interest noted on it." G.S. 20-58.7. *See* G.S. 20-57(h).

Defendant contends that no fixture filing was required because G.S. 20-58 *et seq*. provides the exclusive method for a first mortgagee like itself to perfect a security interest in a mobile home. We agree. "[T]he provisions of Article 9 of the Uniform Commercial Code pertaining to the filing, perfection and priority of security interests do not apply to a security interest in any personal property required to be registered pursuant to Chapter 20, entitled 'Motor Vehicles,' unless such property is held as inventory and the security is created by the inventory seller. G.S. 25-9-302(3)(b)." *Bank of Alamance v. Isley*, 74 N.C. App. at 492, 328 S.E.2d at 869. *See Ferguson v. Morgan*, 282 N.C. 83, 191 S.E.2d 817 (1972). G.S. 25-9-302(3) provides that "[t]he filing of a financing statement otherwise required by this article is not necessary or effective to perfect a security interest in property subject to . . . the following statute of this State: G.S. 20-58 *et seq*. as to any personal property required

to be registered pursuant to Chapter 20 of the General Statutes
. . . ." The North Carolina Comment to G.S. 25-9-302 specifically
states that "North Carolina has adopted Alternative A of subsec-
tion (3). The effect of that alternative is to preserve the operation
of the North Carolina certificate of title law relating to motor
vehicles and the perfection of security interests therein. G.S. 20-58
through 20-58.10." G.S. 25-9-302(4) provides that "[c]ompliance with
a statute or treaty described in subsection (3) is equivalent to
the filing of a financing statement under this article, and a security
interest in property subject to the statute or treaty can be perfected
only by compliance therewith. . . ."

Based on the language of G.S. 20-58 *et seq.*, we believe the
legislature intended that this statute provide the exclusive method
for a first mortgagee to perfect a security interest in a mobile
home. As to the soundness of this policy, we also find convincing
the reasoning of the Kansas Court of Appeals from a similar
case:

> We find unconvincing the argument . . . that subsequent parties
> with an interest in the real estate are often unable to ascertain
> whether the structure on the property is a mobile home. While
> it may not be readily apparent whether the structure is or
> is not a mobile home, these parties can protect their interests
> by more careful inspection, by questioning the home owner,
> or by checking for a certificate of title. As a policy matter,
> it is more reasonable to require a party who subsequently
> obtains an interest in specific real estate to make inquiry con-
> cerning a structure located on the property than to require
> a party with a security interest in a mobile home to maintain
> constant vigilance regarding the whereabouts and alleged fix-
> ture status of the mobile home.

*Beneficial Finance Company of Kansas, Inc. v. Schroeder*, 12 Kan.
App. 2d 150, 153-54, 737 P.2d 52, 55, *review denied*, 241 Kan. 838
(1987). *Accord Barnett Bank of Clearwater, N.A. v. Rompon*, 377
So.2d 981 (Fla. App. 1979). Parenthetically, we note that here, plain-
tiff, the subsequent creditor, had record notice from the records
of the tax administrator's office that the dwelling on the 3.4 acre
tract of land was a mobile home. Consequently, plaintiff was in
the best position to protect its own interests.

From the record, it is clear that there are no factual issues
remaining for trial. Additionally, at oral argument counsel for both

parties conceded that there were no factual disputes and that the only legal issue concerned the priority of liens. We conclude that the defendant's lien recorded on the certificate of title has priority. Accordingly, the trial court's order denying plaintiff's motion for partial summary judgment is affirmed and we remand with instructions for entry of summary judgment for defendant.

Affirmed and remanded.

Judges GREENE and LEWIS concur.