STATE OF NORTH CAROLINA v. BARRY DOUGLAS CLAPP

No. COA98-1099

(Filed 21 September 1999)

### Evidence— motion in limine—habitual impaired driving—driving while license revoked—operation of vehicle

The trial court did not err by allowing the State's motion in limine to prohibit the introduction of evidence by defendant that the vehicle he was alleged to have been operating was not operable in a case involving habitual impaired driving and driving while license revoked because the State's evidence was sufficient to show defendant operated the vehicle in the presence of a police officer.

Judge GREENE concurring in the result.

Appeal by defendant from judgment entered 16 October 1997 by Judge James D. Llewellyn in New Hanover County Superior Court.

**STATE v. CLAPP**

[135 N.C. App. 52 (1999)]

Certiorari allowed 26 February 1998 for defendant. Heard in the Court of Appeals 17 August 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Jonathan P. Babb, for the State.*

*Thomas S. Hicks for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Barry Douglas Clapp ("defendant") was indicted and subsequently convicted of Habitual Impaired Driving and Driving While License Revoked. The State's evidence at trial tended to show the following. On 2 March 1997 prior to 3:00 in the morning, defendant entered the Islander Kwik Mart ("Kwik Mart") in Carolina Beach. John McDade ("McDade"), Kwik Mart employee, observed that defendant was bobbing and weaving. McDade later noticed that defendant was sitting in the driver's seat of a car in the parking lot, apparently asleep. The car engine was running and the car was blocking the gas pumps at the Kwik Mart. McDade called the Carolina Beach Police Department.

A few minutes later, Officer John Knoll of the Carolina Beach Police Department arrived. After speaking with McDade, Officer Knoll approached the car in which defendant was seated wearing the seat belt. Officer Knoll shined his flashlight in the car and commanded defendant to wake up. Defendant did not wake up, however, until Officer Knoll reached through the partially open window and tugged defendant's shoulder.

When defendant awoke, Officer Knoll told him that he needed to talk to him. Defendant stated that he was not driving and then said, "Let me pull over." Defendant put the car in forward gear and the car rolled forward. Officer Knoll commanded defendant to stop the car. Defendant put the car into park, but subsequently put the car into forward gear again and the car moved forward. Officer Knoll repeated his command that defendant stop the car. Defendant stopped the car, but then put it into forward gear a third time, causing Officer Knoll to command him a third time to stop the car.

Defendant exited the car and accompanied Officer Knoll to the patrol car. Officer Knoll noticed that defendant was unsteady on his feet, his clothing was mussed, his eyes were glassy and bloodshot, his speech was slurred, and he had a moderate odor of alcohol on his breath. Defendant told Officer Knoll that his name was "Buddy D.

Clemmons" and that his date of birth was "June 25, 1954." Officer Knoll later determined that information was not correct.

Officer Knoll took defendant to the police department where defendant refused all field sobriety tests as well as the Intoxilyzer 5000 breath test. Defendant admitted that he was seated behind the steering wheel of the car with the motor running and that he put the car in gear. Defendant denied that he was under the influence of alcohol but indicated that he took medicine, specifically tranquilizers. He denied that he had been drinking and also that he had been driving. Finally, defendant admitted that he had previously been convicted of three charges of Driving While Impaired, Larceny, Possession of Cocaine, two charges of Driving While License Revoked and Disorderly Conduct.

Defendant's evidence tended to show the following. On 1 March 1997, David Clapp, defendant's brother, helped defendant move from St. Joseph's Street to Harbor Avenue. Defendant had consumed two beers at around 11:00 that evening and had taken medication around midnight. Defendant takes the prescription medication, Elavil, for back and neck injuries he sustained in an auto accident. The medication causes him to become sleepy, have slurred speech and red and glassy eyes.

During the early morning on 2 March 1997 shortly before defendant was arrested, David Clapp left defendant in the car at the Kwik Mart and walked back to Harbor Avenue. David Clapp left the Kwik Mart on foot in order to get a battery pack to start the car, which had been switching off when he put it into gear. After his brother left, defendant went into the Kwik Mart, bought a sandwich and a soda, returned to the car and fell asleep. When Officer Knoll awakened him, defendant stated that he was not driving the car. He was wearing the seat belt because the car had automatic seat belts. When defendant put the car into gear, he was attempting to show the officer how the car would switch off and he did not intend to go anywhere.

Defendant did not give the officer the name "Barry D. Clemmons," but instead the officer misunderstood defendant when he gave his name. At the police department, defendant was unable to perform the sobriety field tests because of his physical condition. He refused to take the breathalyzer test because his brother once registered .02 on the test after having consumed no alcohol. Defendant requested a blood test.

After deliberations, the jury found defendant guilty of Habitual Impaired Driving and Driving During Revocation and not guilty of Hindering and Delaying a Public Officer. On 16 October 1997, Judge James D. Llewellyn entered judgment on the jury verdict. The trial court sentenced defendant to a minimum term of sixteen (16) months and a maximum term of twenty (20) months in the North Carolina Department of Correction for Habitual Impaired Driving. Additionally, the trial court sentenced defendant to sixty (60) days in the Department of Correction for Driving During Revocation, to run at the expiration of the sentence imposed for Habitual Impaired Driving. Defendant did not appeal. Defendant filed a Petition for Writ of Certiorari which was granted by this court on 26 February 1998.

On appeal, in his only assignment of error, defendant argues that the trial court committed error by allowing the State's motion *in limine* to prohibit the introduction of evidence by defendant that the vehicle he was alleged to have been operating was not operable. Defendant further argues that this error was prejudicial and entitles him to a new trial for the offenses of Habitual Impaired Driving and Driving During Revocation. We cannot agree.

A ruling on a motion *in limine* is within the sound discretion of the trial court and will only be disturbed on appeal in the case of a manifest abuse of discretion. *State v. Hightower*, 340 N.C. 735, 746-47, 459 S.E.2d 739, 745-46 (1995). Such a motion operates to "exclude anticipated prejudicial evidence before such evidence is actually offered in the hearing of a jury." *Id.* at 746, 459 S.E.2d at 745. A motion *in limine* may be granted to "prevent the jury from ever hearing the potentially prejudicial evidence thus obviating the necessity for an instruction during trial to disregard that evidence if it comes in and is prejudicial." *State v. Tate*, 300 N.C. 180, 182, 265 S.E.2d 223, 225 (1980).

A party must preserve a motion *in limine* for appeal as "[r]ulings on motions *in limine* are preliminary in nature and subject to change at trial[.]" *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999). In the case *sub judice*, defendant preserved for appeal his challenge to the State's motion *in limine* by introducing evidence out of the presence of the jury that the car was not operable.

Defendant argues that evidence that the car he was driving was not operable would have tended to disprove that the car was a vehicle, thereby rebutting one of the elements that the State had the bur-

den to prove. In order to establish a case of Driving While Impaired or Driving During Revocation, the State must prove that defendant drove a vehicle. A person is guilty of the offense of Impaired Driving if he "drives any *vehicle* upon any highway, any street, or any public vehicular area . . . (1) While under the influence of an impairing substance; or (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more." N.C. Gen. Stat. § 20-138.1 (1993) (emphasis added). A person commits the offense of Driving While License Revoked if he "drives any *motor vehicle* upon the highways of the State while the license is revoked." N.C. Gen. Stat. § 20-28(a) (Cum. Supp. 1998) (emphasis added).

A vehicle is defined as "[e]very device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power . . . ." N.C. Gen. Stat. § 20-4.01(49) (Cum. Supp. 1998). More specifically, a motor vehicle is defined as "[e]very vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle." N.C. Gen. Stat. § 20-4.01(23) (Cum. Supp. 1998).

In the case *sub judice*, defendant admitted that he was sitting behind the wheel of an automobile while the motor was running, that he put the car into drive three times and that the car moved forward on each occasion. Defendant's evidence that the car was not functioning properly prior to this incident does not negate the fact that it was a vehicle. Defendant demonstrated in the presence of a police officer that the car in which he was seated was a device in which a person might be "transported or drawn upon a highway" for purposes of North Carolina General Statutes section 20-4.01(49). N.C. G.S. § 20-4.01(49) (Cum. Supp. 1998). In addition, a car is clearly a motor vehicle as it is "designed to run upon the highways" for purposes of North Carolina General Statutes section 20-4.01(23). N.C. G.S. § 20-4.01(23) (Cum. Supp. 1998); see *Peoples Savings and Loan Assn. v. Citicorp Acceptance Co.*, 103 N.C. App. 762, 766, 407 S.E.2d 251, 253, *disc. review denied*, 330 N.C. 197, 412 S.E.2d 59 (1991) (concluding a mobile home is a motor vehicle even after it is affixed to realty because it is designed to run upon the highways).

We do not reach the question of whether a car that is inoperable can be considered a "vehicle" because defendant did in fact operate the car. An operator of a car is defined as "[a] person in actual physical control of a vehicle which is in motion or which has the engine

running." N.C. Gen. Stat. § 20-4.01(25) (Cum. Supp. 1998). The terms "operator" and "driver" are synonymous. *Id.* This Court has held that where a defendant sat behind the wheel of the car in the driver's seat and started the engine, there was sufficient evidence to show that the defendant was in actual physical control of a vehicle. *State v. Fields,* 77 N.C. App. 404, 406, 335 S.E.2d 69, 70 (1985). "[T]he State's evidence was sufficient to show that the defendant 'drove' a vehicle within the meaning of G.S. 20-138.1. Defendant's purpose for taking actual physical control of the car and starting the engine is irrelevant." *Id.* at 407, 335 S.E.2d at 70.

We conclude that the trial court committed no error by allowing the State's motion *in limine* to prohibit the introduction of evidence by defendant that the vehicle he was alleged to have been operating was not operable where defendant operated the vehicle in the presence of a police officer. As such, defendant's assignment of error fails.

Defendant raised five assignments of error on appeal. However, defendant failed to bring four of them forward in the brief. Therefore, the following assignments of error are deemed to be abandoned pursuant to our appellate rules: (1) the denial of the trial court of defendant's motion for directed verdict at the end of the State's evidence; (2) the failure of the trial court to intervene *ex mero motu* to prohibit the introduction of inadmissible evidence of defendant's previous criminal record; (3) the denial of the trial court of defendant's motion to dismiss the offense of Driving While Impaired at the end of all the evidence; and (4) the entering of judgment by the trial court against defendant for a conviction of Habitual Driving While Impaired when the jury failed to find defendant guilty of that offense and the trial court failed to conduct a hearing before the trial outside the presence of the jury that the defendant could admit, deny, or remain silent as to the previous convictions that enhanced his conviction of Driving While Impaired to a felony. N.C.R. App. P. 28(b)(5).

For the reasons stated herein, the record shows that defendant received a trial free from prejudicial error.

NO ERROR.

Judge HORTON concurs.

Judge GREENE concurs in the result.

**STATE v. CLAPP**

[135 N.C. App. 52 (1999)]

Judge GREENE concurs in the result.

I believe the trial court committed error in allowing the State's motion in limine. I, nonetheless, join with the majority because the error was harmless.

The offenses with which Defendant was charged, driving while impaired and driving while license revoked, required the State to prove that Defendant was driving a *vehicle* upon a highway, street, public vehicular area and a *motor vehicle* upon the highways, respectively. N.C.G.S. § 20-138.1(a) (1993) (impaired driving); N.C.G.S. § 20-28(a) (Supp. 1998) (driving while license revoked). This required the State to show that the 1989 Dodge Colt in which Defendant was found was "self-propelled" or capable of transporting a person or property upon a highway. N.C.G.S. § 20-4.01(49) (Supp. 1998); N.C.G.S. § 20-4.01(23) (Supp. 1998). Defendant was therefore entitled to present evidence on this issue, *see State v. Marshall*, 105 N.C. App. 518, 525, 414 S.E.2d 95, 99, *disc. review denied*, 332 N.C. 150, 419 S.E.2d 576 (1992) (accused in criminal case has right to defend against State's accusations), and have the matter determined by the jury. The allowance of the motion in limine denied Defendant of this right.

The issue presented in this case is quite different from that presented in *State v. Fields*, 77 N.C. App. 404, 335 S.E.2d 69 (1985). In that case, this Court held that one seated in the driver's seat of a motor vehicle, with the engine running, is the driver of that vehicle for purposes of section 20-138.1(a). In *Fields*, there also was no dispute that the vehicle in which the defendant was seated was in fact a "vehicle" within the meaning of section 20-138.1(a). In this case, Defendant disputes that the Dodge Colt was a "vehicle" or "motor vehicle" within the meaning of the pertinent statutes.

I, however, do not believe Defendant is entitled to a new trial. The evidence suppressed would have tended to show only that the Dodge Colt would not move "if the head lights were on."[1] All the evidence showed that the Dodge Colt was capable of moving "if the head lights were off" and did move forward once it was put in gear by Defendant in the presence of the arresting officer. The question for the jury was whether the Dodge Colt was capable of moving, with *or* without the head lights switched on. The exclusion of Defendant's evidence therefore was harmless. *See* N.C.G.S. § 15A-1443(b) (1997).

---

1. The proffered evidence was that the alternator on the Dodge Colt was defective and that when the head lights were switched on, the engine would stop.