**In re Gerald D.W. NORTH, Debtor.**

**Gerald D.W. North, Plaintiff,**

v.

**Desert Hills Bank, Defendant.**

**Bankruptcy No. 2–03–15266–PHX–RJH. Adversary No. 04–00052.**

United States Bankruptcy Court, D. Arizona.

May 27, 2004.

Ronald J. Ellett, Jay S. Volquardsen, Phoenix, AZ, for Debtor.

John J. Fries, Ryley Carlock & Applewhite, Phoenix, AZ, for Desert Hills Bank.

Steve Brown, Steven Brown & Associates PC, Phoenix, AZ, for Trustee Diane Mann.

## OPINION ON DESERT HILLS' MOTION FOR PARTIAL SUMMARY JUDGMENT

RANDOLPH J. HAINES, Bankruptcy Judge.

The issue here is whether an application for a duplicate certificate of title is sufficient to perfect a lien against a motor vehicle when the original certificate of title remains in existence and reflects no lien.

We conclude that it is sufficient to perfect the lien, at least with respect to a hypothetical judicial lien creditor who has not acted in detrimental reliance on the "clean" title.

### Factual Background

Gerald North, the Chapter 11[1] Debtor ("North" or "Debtor"), filed a preference action to avoid liens against Debtor's Mercedes and residence held by Desert Hills Bank (the "Bank"). The Bank responded with a motion for partial summary judgment in favor of its security interest in the Mercedes.

The material facts are undisputed. On March 28, 2003, North purchased a 2003 Mercedes Benz SL55 from Phoenix Motor Company. North signed a retail sales agreement with Phoenix Motor Company and financed the net purchase price through the Bank by executing a promissory note and signing a security agreement. The security agreement granted the Bank a lien on the Mercedes securing North's obligation to pay the loan amount of $109,590. North acknowledges signing the security agreement. Among many things, the security agreement entitles the Bank to file a UCC–1 financing statement or a copy of the agreement for the purpose of lien perfection. It also irrevocably appointed the Bank as North's attorney-in-fact to execute finance statements and documents of title.

On April 15, 2003, the Arizona Motor Vehicle Division ("MVD") mailed North a certificate of title. This title showed North as the owner of the Mercedes and did not indicate the Bank's lien, for reasons unknown to Debtor and the Bank.

On May 28, 2003, Phoenix Motor Company submitted to the MVD another appli-

---

1. Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. § 101–1330.

cation for title and registration, noting that resubmission of the documents was for the purpose of "adding lien holder correction." The MVD endorsed the receipt of the application on May 28, 2003, at 4:20 p.m. North filed his Chapter 11 petition 91 days later, on August 27, 2003.[2]

North's adversary complaint asserts that the lien against the Mercedes is avoidable as a preference because it was perfected within 90 days of the Debtor's bankruptcy on account of antecedent debt, at a time when North was insolvent.[3] North also argues that the Bank's lien against the Mercedes was never properly perfected because the vehicle was outside of Arizona for more than 120 days when the attempted perfection occurred, and because North held a certificate of title not subject to any liens. Alternatively, North argues that even if the Bank's lien was properly perfected when it was reflected on the duplicate title, it is avoidable because there were two extant titles as of the date of bankruptcy and a third party creditor or purchaser would have been entitled to rely on the original clean title. Finally, North maintains that the duplicate title is void because it was obtained under a power of attorney not signed by him thereby violating Arizona Revised Statutes ("A.R.S.") § 47–9303(b).

The Bank's motion for summary judgment maintains that perfection occurred outside the ninety day preference period, and that perfection was proper in Arizona, even though the car was in California, because it was titled in Arizona. The Bank disputes North's assertion that the power of attorney used by Phoenix Motors was forged, but argues that even if it were the Bank's security agreement authorized the Bank to act as his attorney in fact for the purpose of noting the lien on the Mercedes' title and executing documents of title. Finally, the Bank argues that the debtor's rights as a bona fide purchaser relate only to real estate, and that as of May 28, 2003, the Bank enjoyed priority over any creditor levying on personalty.

The Court ruled from the bench at the conclusion of oral argument, granting the Bank's motion for partial summary judgment. The Court now issues this opinion to provide its analysis of the applicable statutes and case law.

### Preference Hinges on Timing of Perfection

 North's ultimate quest is to avoid the Bank's lien against the Mercedes as a preference. Under § 547(b), a trustee or debtor in possession can avoid a transfer if the transfer: 1) was of an interest of the debtor in property, 2) was to or for the benefit of a creditor, 3) was for or on account of an antecedent debt, 4) was made within 90 days before the filing of the bankruptcy, 5) was made while the debtor was insolvent, and 6) enabled the

2. This is not a coincidence. North is an attorney, although no longer licensed to practice in Arizona, and this is his third chapter 11 case for himself this decade. On August 25, 2003, his bankruptcy counsel wrote to the Bank's counsel stating that "Mr. North will be filing a bankruptcy on or before the ninetieth day of your client's purported lien perfection on his Mercedes." His counsel relied on an internet service that reported the Bank's lien had been perfected on May 29, and obviously timed the filing of this case to be within 90

days of that date. But as Rick said about the waters of Casablanca, he was misinformed.

3. North's schedules, filed on September 16, 2003, reflect a net worth of approximately $22 million. North has argued that the value of foreign government war bonds plummeted sometime last summer rendering him insolvent, but he has never amended his schedules. In his cross motion for summary judgment on his preference action he merely relied on the presumption of insolvency found in 11 U.S.C. § 547(f).

creditor to receive more than it would have received in a chapter 7 case. All elements of a preference must be met before a trustee may void a transfer.

Here the debtor's interest in property that was transferred was the lien granted to the Bank. Section 547(e)(2) has special rules for determining when a transfer of a lien is deemed made, which affect both elements 3 and 4 listed above—whether the lien was granted for antecedent debt, and whether the lien was granted within 90 days of the bankruptcy filing. These special rules hinge on when the lien is perfected, and perfection is also governed by a special definition in § 547(e)(1).

Under § 547(e)(2)(A), a transfer of a lien is deemed made when the debtor granted it to the creditor, if it is perfected within 10 days of that date. Here there is no argument that the Bank perfected its lien within 10 days of March 28, 2003, the day when North purchased the Mercedes and signed the security agreement granting the lien to the Bank. Consequently this rule does not apply here.

Instead, §§ 547(e)(2)(B) or (C) will govern. They provide, respectively, that the transfer is deemed made when perfected or, if not perfected as of the date of the petition, the transfer is deemed made immediately before the date of the filing of the petition. In either case, the lien will have been transferred on account of an antecedent debt, because for either of these rules to apply the debt must have been incurred more than 10 days prior to the perfection of the lien. If the lien was perfected on or before May 28, 2003, the transfer will have been made more than 90 days before the petition and therefore is not preferential. However, if it was never perfected prepetition then it will be deemed made immediately before the filing of the petition, satisfying the 90 day requirement and being avoidable as a preferential transfer. The Bank contends its lien was perfected on May 28, while North contends it was never perfected.

Section 547(e)(1)(B) defines when a personal property lien is perfected:

> a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

■ North misreads this definition to mean that perfection has not occurred if a hypothetical purchaser "on a simple contract" could acquire the personal property free of the lien. That is not what it says. The hypothetical person is a *creditor* on a simple contract, not a purchaser. The "simple contract" does not refer to a contract to purchase the collateral, but rather a contract that makes the hypothetical person a creditor.[4] For example, he could be

---

4. This "simple contract" language originated in §§ 60a(2) and a(5) of the Bankruptcy Act, was greatly simplified by the National Bankruptcy Conference, Report of the Committee on Coordination of the Bankruptcy Act and the Uniform Commercial Code (1970)(the "Gilmore Committee Report"), and such simplified language was adopted by the Report of the Commission on the Bankruptcy Laws of the United States—July 1973, H.R. Doc No. 93–137, pt. II, § 4–607(g)(6), at 168, and Note 27, at 174–75 (1973). But while the subsequent provisos made the Act's original definition difficult to parse, on this point it was perhaps clearer: "For the purposes of subdivisions a and b of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." Bankruptcy Act § 60a(2). And Bankruptcy Act § 60a(4) clarified what was "simple" about the "simple contract" requirement, namely that the lien be one that arises solely from the docketing of a judgment or a pre- or post-judgment attach-

a creditor on an unrelated debt. The proper determination is whether such a creditor who obtains a judgment[5] and executes on that judgment by levying on the car would have superior rights to the Bank. If the Bank would prevail in such a context, its lien is deemed perfected. This distinction between a purchaser and a levying creditor[6] could be critical because the former might rely on a "clean" title, while the latter may rely on nothing more than the debtor's apparent possession of the vehicle.

The issue, then, is whether the Bank's lien would have been superior to a levying creditor prior to May 29, the 90th day prepetition.

### Choice of Law

The first issue is whose law controls the perfection of the lien. North's argument that. California law should govern perfection because the Mercedes was located there for more than four months is apparently based on his misreading of A.R.S. § 47–9301 (1999), Arizona's version of the Uniform Commercial Code ("U.C.C.") § 9–301, or a belief that the former Article 9 provisions governing "mobile goods" still prevail.

The revised Article 9[7] has eliminated the special rules applicable to "mobile goods."[8] The former U.C.C. § 9–103, A.R.S. § 47–9103(A)(4)(a) (1997), essentially required reperfection within four months when collateral is brought into a new jurisdiction. The new Article 9, however, provides a general rule that "while a *debtor* is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection and the priority of a security interest in collateral." A.R.S. § 47–9301(1) (1999) (emphasis added). The next paragraph, on which North relies, does refer to the location of the collateral, as distinguished from the location of the debtor, but it is limited to possessory security interests.[9] Obviously we are not here dealing with any possessory security interest.

North also argues that the effect of perfection "would be subject to the Four Month Rule," citing A.R.S. § 47–9316. But the Four Month Rule under the new Article 9 is limited to "a change *of the debtor's* location to another jurisdiction." A.R.S. § 47–9316(A)(2) (1999) (emphasis added). The official comment to U.C.C.

---

ment or garnishment, rather than a lien that may be given a "special priority" over prior liens due to the subject matter of the contract from which it arose, such as perhaps an employment contract.

5. Actually the definition does not require a judgment lien creditor, as does § 544(a)(1). The creditor might have obtained a prejudgment attachment if permissible under state law. *See* note 4 *supra.*

6. The Code does adopt a bona fide purchaser test for perfection with respect to real property. § 547(e)(1)(A). This distinction also existed in Bankruptcy Act § 60a(2).

7. Arizona adopted the revised Article 9 in 1999, effective as of July 1, 2001. 1999 Ariz. Sess. Laws Ch. 203, § 35.

8. The official comment to U.C.C. § 9–301 states: "The approach taken in paragraph (1) also eliminates some difficult priority issues and the need to distinguish between 'mobile' and 'ordinary' goods, and it reduces the number of filing offices in which secured parties must file or search when collateral is located in several jurisdictions." U.C.C. § 9–301 cmt. 4 (2002).

9. North's response to the Bank's motion for summary judgment argues that "if the collateral is located in another jurisdiction (here, California), 'the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection' and other relevant issues." That is an excerpt from A.R.S. § 47–9301(2) but it fails to include the rest of the sentence, "of a possessory security interest in that collateral."

§ 9–301, which states the general rule that perfection of most nonpossessory security interests will be governed by the location of the debtor, notes that its intent was to "reduce the frequency of cases in which the governing law changes after a financing statement is properly filed. (Presumably, debtors change their own location less frequently than they change the location of their collateral.)" U.C.C. § 9–301 cmt. 4 (2002). Because it is not alleged that North moved to California, the Four Month Rule of the current Article 9 has no application.

Moreover, because the Mercedes is a titled vehicle, none of the provisions on which North relies has any application, under either the new or the old [10] Article 9. The new general rule in A.R.S. § 47–9301 (1999) (U.C.C. § 9–301), is introduced with the proviso "Except as otherwise provided in §§ 47–9303 through 47–9306." A.R.S. § 47–9303(C) (1999) (U.C.C. § 9–303) provides that when goods are covered by a certificate of title, the "local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection," etc. The Mercedes currently is and always has been titled and registered in Arizona. North never argues that it was ever registered or titled in another jurisdiction. Arizona law therefore governs perfection.

### Validity of New Title Application.

North argues that the May 28 title application that reflected the Bank's lien was not valid because he did not consent to its filing. He contends it was filed by the dealer using a power of attorney that was either forged or given to the dealer in connection with another, unrelated transaction. He argues that such a title application, to which he did not consent, fails to comply with A.R.S. § 28–2132(B), which provides that "The applicant's signature on the application for title or the application for registration only is consent for the lien or encumbrance to be indicated by the department on its official title record for the vehicle." North contends that since he personally did not sign the application for title or registration, no consent was given to have the Bank's lien reflected on the duplicate title, which is therefore invalid for purposes of perfecting the Bank's lien.

The statute does not expressly require the owner's consent to reflect the lien. It only states that his signature grants such consent.

■ But even if the statute is read to imply that the owner's consent is required, it does not state that the owner's signature on the application is the only means by which such consent may be given. North does not dispute signing a security agreement that expressly consented to the Bank's lien and that it be perfected. The Consumer Security Agreement signed by North stated: "I authorize Lender to file a UCC–1 financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest.... I irrevocably appoint Lender as my attorney-in-fact to execute financing statements and documents of title in my name...." The application the dealer submitted to the MVD was a "document of title," and in any event A.R.S. § 47–9311(B) equates the recordation of a lien on a motor vehicle title to the filing of a financing statement. Consent to filing a "UCC–1 financing statement" is

---

10. Under the old Article 9, a four month rule could apply to titled vehicles, but only if a new title was also issued by the state to which the collateral had been removed. A.R.S. § 47–9103(B)(2). North does not allege a certificate of title for the Mercedes was ever issued by California, so even under the former Four Month Rule, Arizona's title would continue to dictate the choice of law and place of perfection beyond four months.

therefore also consent to filing an application for title to reflect a lien.

North consented to have the Bank's lien indicated on the Mercedes' title. It makes no difference that the title application was filed by the dealer rather than by the Bank, because in doing so the dealer was clearly acting on the Bank's behalf as its agent. The sole purpose of filing the new application was to perfect the Bank's lien, not to give the dealer some interest in the vehicle. The title application and perfection of the Bank's lien were therefore valid, regardless of the validity of the power of attorney actually utilized by the dealer.

Moreover, it is questionable whether North in his capacity as debtor in possession [11] has standing to complain that the dealer allegedly acted without his consent in recording the Bank's lien. In bringing this preference action, North was standing in his creditors' shoes, not his own. North has no right to avoid the Bank's lien on his own behalf; he granted it, he consented to it and he obtained the monetary benefit from it. Indeed, the Bank's lien has always been valid and enforceable as against North himself ever since he granted it on March 28, and would have been so even if it were never reflected on the title, as such perfection requirements only affect the rights of third parties.

From his creditors' perspective, however, no wrong was committed by the dealer in filing the new application to reflect the Bank's lien. The lien was valid between North and the Bank. Creditors were not harmed, misled or defrauded by its being reflected on the title. The dealer did exactly what the policy of both Article 9 and Arizona's motor vehicle title statutes are intended to accomplish, to give public notice of the existence of a valid lien. It is therefore difficult to see how such a creditor could be heard to complain if there were some defect in the process by which such a valid lien came to be recorded.

Indeed, the new U.C.C. § 9–506 provides that a financing statement is effective as to creditors notwithstanding technical defects unless it is "seriously misleading." A.R.S. § 47–9506 (1999). There was nothing misleading about the Bank's lien that was reflected on the new title issued as a result of the dealer's application of May 28. To the contrary, it reflected the truth of the transaction.

The application submitted by the dealer on May 28, and the certificate of title subsequently issued by the MVD reflecting the Bank's lien, were valid, both as to Mr. North and as to his creditors, including a subsequently levying creditor.

### The Effect of the Duplicate "Clean" Title

Here we come to the crux of the issue: If there are two vehicle titles outstanding, one that is clean and one that reflects a lien, would a levying creditor be subject to the lien?

Arizona law provides that a lienholder against an automobile must comply with the Arizona title statute in order to have priority over the rights of a lien creditor or subsequent purchaser.[12] A.R.S. § 28–2132

---

11. North was debtor in possession when he filed this adversary complaint, and debtors in possession are entitled to exercise the powers the Code grants to trustees, pursuant to § 1107. The Court has since appointed a chapter 11 trustee, so North no longer may assert the trustee's powers or, through them, the rights of his creditors.

12. A.R.S. § 47–9311(B) provides that "Compliance with the requirements of [title 28, chapter 7, article 4, which requires indication of the security interest on a certificate of title for a vehicle] for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this chapter." A.R.S. § 28–2131 provides that a

provides that the MVD shall provide title application forms that provide for the indication of a lien or encumbrance on the vehicle. It also provides that upon receipt of such an application the MVD shall endorse it with the date and hour of its receipt, and shall then issue a new certificate of title including a statement of all liens. A.R.S. § 28–2133(B) provides that the "filing and issuance of a new certificate of title as provided in this article is constructive notice to creditors of the owner or to subsequent purchasers of all liens and encumbrances against the vehicle" except for possessory liens. Except when the documents are filed within 10 days of their execution, such constructive notice "dates from the time of receipt and filing of the documents by the department as shown by its endorsement." *Id.*

In short, Arizona law provides that a lien against a motor vehicle is perfected upon the filing of an application for a new title reflecting that lien,[13] determined by the MVD's date and hour of endorsement stamped on the application. Here, that endorsement was at 4:20 pm on May 28, 2003.

What if there is a duplicate title in existence that does not reflect that lien? The statute does not expressly contemplate this situation. Duplicate titles are to be issued only if the original is "lost or mutilated or becomes illegible." A.R.S. § 28–2008. An original title "is valid for the life of the vehicle as long as the vehicle is owned by the original holder of the title, unless it has been replaced by a duplicate" issued pursuant to that provision. A.R.S. § 28–2009. And A.R.S. § 28–2132(D) provides that

"The department shall not issue a new certificate of title [to a purchaser or transferee] if the outstanding certificate of title indicate an existing lien or encumbrance unless the lien or encumbrance has been satisfied or the lienor or encumbrancer has consented in writing or electronically to the transfer of title."

These statutes contemplate there will only be one title outstanding at any point in time. The Arizona Court of Appeals has so concluded. *Doherty v. Obregon,* 6 Ariz.App. 401, 403, 433 P.2d 52, 54 (1967) ("We believe that the statutes do not contemplate more than one title to a single vehicle....").

■ Which title is effective if there nevertheless is a duplicate that was not contemplated by the statute? The result is implied, although not expressly stated, by A.R.S. § 28–2131, which provides that a security agreement or other lien or encumbrance against a motor vehicle is "not valid against the creditors of an owner acquiring a lien by levy or attachment or against subsequent purchasers or encumbrancers without notice until the requirements of this article are met." The negative implication is that such a lien *is* valid against judicial lien creditors and subsequent purchasers when the "requirements of this article are met" with respect to that lien. This means that when the application for title reflecting the lien is filed with the department, the lien is effective against subsequent lien creditors and purchasers, regardless of the existence of another clean title.

---

security agreement or other lien or encumbrance against a motor vehicle is "not valid against the creditors of an owner acquiring a lien by levy or attachment or against subsequent purchasers or encumbrancers without notice until the requirements of this article are met."

13. A.R.S. § 47–9303(B) also provides: "Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority."

There is no statutory exception to such effectiveness even if the subsequent lien creditor or purchaser somehow relied on a duplicate title that failed to reflect the lien. Nor is there any statutory requirement that the lien be reflected on all outstanding titles. Once the lienholder has complied with the statute by filing an application to reflect its lien, it is effective against everyone. This conclusion is further bolstered by A.R.S. § 28–2132(D), which effectively provides that even a bona fide purchaser relying on a clean title could not have a new title issued to him without the satisfaction or consent of a lienholder who is properly reflected on another title.

The Arizona Court of Appeals effectively so held in *Doherty*, 6 Ariz.App. 401, 433 P.2d 52. In that case, a truck owner possessed an original title without any encumbrances. He applied for a duplicate title even though the original was not lost. He then borrowed against the truck using the original title, and that lien was reflected in the lender's application filed with the MVD on August 3. The owner then sold the truck to a dealership using the clean duplicate title without disclosing the existing lien. The dealership subsequently resold it to a consumer on or about September 17. The ultimate consumer was unable to obtain title from the MVD, because its records reflected the lien. The consumer sued the dealership to rescind the purchase, arguing there was a breach of the dealer's warranty of title. The Court of Appeals upheld judgment for the consumer.

The court reasoned that since the lien holder complied with the certificate of title as required under former A.R.S. § 28–325,[14] the dealership could not defeat the lienholder's lien that had previously been filed with the MVD. It stated the "sole question" as "whether a lien forwarded to the Motor Vehicle Division with the original title shall be valid against a subsequent purchaser or encumbrancer without notice after a duplicate title has been issued, who acts in reliance on the duplicate title." *Doherty*, 6 Ariz.App. at 402, 433 P.2d at 53. The court answered that question in favor of the lienholder because "The purpose of requiring chattel mortgages upon automobiles to be filed or registered is to protect the mortgagee not in possession from the claims of subsequent purchasers." *Id.* at 403, 433 P.2d at 54.

■ *Doherty* supports this Court's interpretation of the statutes and defeats North's argument. It necessarily means that once a lienholder complies with the registration statutes by applying for a certificate reflecting its lien, that lien will be valid even against a bona fide subsequent purchaser who actually relied on another clean title. This is also how the Court of Appeals subsequently interpreted *Doherty*. In *Wallace Imports, Inc. v. Howe*, 138 Ariz. 217, 673 P.2d 961 (App.Div. 1 1983), the court stated:

Implied, but not stated in *Doherty* is the conclusion that the car dealer was bound by the filed lien at the Division and the notice of lien on the original certificate of title which the dealer never saw. Also implied is a conclusion that the filed

---

**14.** At the time of the court's ruling in 1967, A.R.S. § 28–325 was not significantly different than current A.R.S. § 28–2131. The current provision incorporates much of the old statutory language. Former A.R.S. § 28–325(A) provided:

no conditional sale contract, conditional lease, chattel mortgage or other lien or en-

cumbrance, title retention instrument or other instrument affecting or evidencing title to, ownership of, or reservation of title to any registered vehicle, other than a lien dependent upon possession, is valid as against the creditors or encumbrances without notice, until the requirements of this section have been complied with.

lien was effective as to the duplicate title although it did not show the encumbrance as required by A.R.S. § 28–325. *Id.* at 223, 673 P.2d at 967. The court later referred to these implications as *dicta,* but in fact they were not. The *holding* of *Doherty* had to be that the recorded lien was effective as to the dealership who relied on the clean title, because otherwise there would have been no breach of its warranty of title. The conclusions are necessary to that result, and are therefore not *dicta.*

*Wallace Imports* relied on similar statutory language as in *Doherty.* The dealership there argued that it was entitled to rely on an original title when it purchased the vehicle, even though a duplicate title had been issued (unknown to it) reflecting a different ownership interest. The dealership relied on former A.R.S. § 28–313, currently § 28–2009, which provided: "The certificate of title shall be valid for the life of the vehicle so long as the vehicle is owned by the original holder thereof." *Wallace Imports,* 138 Ariz. at 221, 673 P.2d at 965. Wallace insisted the original title was valid at the time the truck was sold to it, and that the certificate of title statute was intended to protect buyers who rely on a title they are provided. The court disagreed and summarized that the legislature created a comprehensive title and registration system for motor vehicles. *Id.* at 223, 673 P.2d at 967. Certificates of titles are issued when a vehicle is sold or resold, when titles are lost and when liens are filed with the Division. Therefore Wallace's argument that an original title should take precedence over a duplicate is unpersuasive. *Id.* Furthermore, the court agreed with an earlier case, *Silva v. Traver,* 63 Ariz. 364, 162 P.2d 615 (1945), where the Arizona Supreme Court held that a title is only prima facie evidence of ownership, and can be rebutted by contradicting evidence. *Wallace Imports,* 138 Ariz. at 224, 673 P.2d at 968. Although *Wallace Imports* deals with an ownership interest and not the issue of a lien or encumbrance, it implicitly holds that relying on the certificate of title is not always absolute, but rather the MVD's records govern.

As in *Doherty* and *Wallace Imports,* there are two extant titles for the Mercedes. The Bank has complied with the title statue and obtained a duplicate title reflecting its lien. Thus a lien creditor or bona fide purchaser would be bound by the filed lien even though not shown on the original title. Cases from other jurisdiction reach this same result.[15]

North relies primarily on a California case that might be read to reach a contrary result, *T & O Mobile Homes, Inc. v. United California Bank,* 40 Cal.3d 441, 220 Cal.Rptr. 627, 709 P.2d 430 (1985). There the California Department of Motor Vehicles ("DMV") omitted United California Bank's ("UCB") lien on the original title and mailed the clean title to the original purchaser of the mobile home. The purchaser presented the title and sold the mobile home to T & O, a bona fide purchaser without notice of UCB's lien. The DMV subsequently contacted the original purchaser and T & O about the mistake of omitting the UCB lien and then issued a new certificate of title reflecting the lien. T & O brought an action against UCB seeking a declaration that T & O was the legal owner and took free of UCB's lien. The trial court held that UCB's lien had been properly perfected and therefore ruled against T & O, which appealed. The California Supreme Court reversed, holding that the "interest of a bona fide pur-

---

15. *E.g., Peoples Sav. and Loan Ass'n v. Citicorp Acceptance Co., Inc.,* 103 N.C.App. 762, 407 S.E.2d 251 (1991); *Smith v. City of Miami,* 440 So.2d 611 (1983).

chaser of a vehicle subject to registration under the Vehicle Code prevails over a technically perfected security interest which is not disclosed on the certificate of ownership." 40 Cal.3d at 455, 220 Cal. Rptr. 627, 709 P.2d at 437. The court emphasized that "anyone transacting business with the owner of a motor vehicle can rely upon the title as reflected by the registration certificate, without further inquiry." *Id.* at 449, 220 Cal.Rptr. 627, 709 P.2d at 433, quoting *First Nat'l Bank of Hays City v. Sprigg,* 209 Cal.App.2d 258, 259–60, 25 Cal.Rptr. 838 (1962). The court also noted that the deposit of a lien with the DMV should not be deemed to impart constructive notice unless the security interest has been indicated on the title. *T & O Mobile Homes,* 40 Cal.3d at 450, 220 Cal.Rptr. 627, 709 P.2d at 434.

Although California's statute was like Arizona's in providing that the perfection of the lien occurs when the application for the certificate is deposited with the DMV,[16] the *T & O* opinion relied on a pre-U.C.C. California decision construing the predecessor of that provision "to require actual registration before constructive notice would be deemed to *date* from the time of deposit."[17] The court therefore concluded that the "deposit [of the application for certificate of title reflecting the lien] should not be deemed to impart constructive notice to a buyer unless the security interest has been accurately listed on the certificate of ownership." *Id.* at 450, 220 Cal.Rptr. 627, 709 P.2d at 434.

The *T & O* case is contrary to the Arizona statute, A.R.S. § 28–2133(B), which expressly provides that the con-structive "notice dates from the time of receipt and filing of the documents by the department as shown by its endorsement." Nothing in the Arizona statute conditions such notice upon the proper issuance of a new certificate of title. The reasoning in *T & O* is also contrary to both *Doherty* and *Wallace Imports,* both cases where bona fide purchasers were not entitled to rely conclusively on the certificate of title alone. Therefore *T & O* does not appear to be good law in Arizona.

Moreover, even if it were the applicable law, *T & O* would not compel a different result here. In *T & O,* the bona fide purchaser purchased before the lien was reflected on any title. Here the MVD actually did issue a new certificate of title reflecting the Bank's lien before the date on which the Code hypothesizes a levying creditor. Consequently even under the rationale of *T & O,* the constructive notice would date from the filing of the application. Because that date is outside the 90 day preference period, the perfection was not preferential.

Finally, it is not at all clear that even the *T & O* court would find a preference on these facts, because *T & O* dealt with a bona fide purchaser whereas § 547(e)(1)(B) hypothesizes only a judicial lien creditor. Most judicial lien creditors do not rely on any certificate of title, but only on their debtor's possession of the vehicle and perhaps a check of the MVD records. When there is no reliance on the actual certificate, the *T & O* court might well rule in favor of the bank that did everything required of it to perfect its lien.[18]

---

16. *T & O Mobile Homes,* 40 Cal.3d at 448, 220 Cal.Rptr. 627, 709 P.2d at 432, citing Vehicle Code § 6301. That provision was amended in 1981 and no longer applies to mobile homes. *Id.*

17. *Id.* at 449, 220 Cal.Rptr. 627, 709 P.2d at 433, citing *Eckhardt v. Morley,* 220 Cal. 229, 230–31, 30 P.2d 423 (1934).

18. Note, however, that the Arizona statute, A.R.S. § 28–2131, implies the same result for bona fide purchasers as for levying creditors. *See* note 12, *supra.*

■ In sum, the Bank's lien was properly perfected on May 28 upon the filing and endorsement of the application for a duplicate title that would reflect the Bank's lien. Because that date is outside the 90 day preference window, the Bank is entitled to partial summary judgment on the preference count.

Because there is another count remaining in the complaint this is not a final appealable judgment. If the Debtor, the Bank or the Trustee desires a Rule 54(b) certification to make this final, that party should file a motion explaining how such certification would serve judicial economy.